In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00663-CV**
_____


**IN RE COMMITMENT OF MICHAEL ELBERT YOUNG**

═══════════════════════════════════════════════════════════

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-05-05229 CV**

═══════════════════════════════════════════════════════════

**OPINION**

The State of Texas filed a petition seeking the civil commitment of Michael

Elbert Young as a sexually violent predator. *See* Tex. Health & Safety Code Ann.

§§ 841.001-.151 (West 2010 & Supp. 2012) (SVP statute). A jury found that

Young is a sexually violent predator, and the trial court rendered a final judgment

and an order of civil commitment. In his appeal, Young challenges rulings by the

trial court regarding discovery, trial procedures, and expert testimony. Finding no

reversible error, we affirm the trial court's judgment.

## Background

In 1993, Young was convicted of two sexually violent offenses, attempted aggravated sexual assault and sexual assault of a child. Before Young completed serving his sentence, the State filed a petition seeking Young's civil commitment as a sexually violent predator. The State's experts presented to the jury their diagnoses that Young suffered from a paraphilia, and they testified that Young suffers from a behavioral abnormality that makes it likely he will engage in another predatory act of sexual violence. The jury found that Young is a sexually violent predator. Young timely perfected his appeal from the jury's verdict.

## Discovery Rulings

### *Young's Requests for Admission to the State*

In issue one, Young contends the trial court committed reversible error by granting the State's motion for protective order, shielding the State from answering Young's fifty-seven requests for admissions. After being served with Young's requests, the State filed a motion for protective order. The State's motion for protective order asserts that twelve of Young's requests were not relevant (requests one through nine, twelve, nineteen, and twenty-nine), that twelve of the requests sought information protected as work-product (requests nine, ten, nineteen, twenty, and twenty-two through twenty-nine), and that thirty-six of the requests, (requests

2

eleven, thirteen through eighteen, twenty-one, and thirty through fifty-seven) would be "best answered" by the State's experts who could be deposed. We review the trial court's rulings on the requests for abuse of discretion. *In re Commitment of Perez*, No. 09-12-00132-CV, 2013 WL 772842, at *5 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (mem. op.).

Generally, requests for admission are an authorized method that parties may use in discovery. *See* Tex. R. Civ. P. 192.1. Under the rules, a party may request "that the other party admit the truth of any matter within the scope of discovery, including statements of opinion or of fact or of the application of law to fact[.]" Tex. R. Civ. P. 198.1. A matter admitted by a party is conclusively established as to the party who made the admission, unless the trial court permits the party to amend or withdraw the response. *See* Tex. R. Civ. P. 198.3. Admissions that are made in the course of discovery are intended to be used by the parties to simplify trials, but they should not be used to require an opposing party to admit claims and concede defenses that a party knows are being disputed. *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011). Through requests, a party may ask another party to admit or deny issues of fact relevant to the pending action or to apply the law to relevant issues of fact. *Maswoswe v. Nelson*, 327 S.W.3d 889, 896-97 (Tex. App.—Beaumont 2010, no pet.).

First, we address the State's argument that it should not be required to answer requests for admissions in SVP cases. According to the State, the attorneys who represent the State in SVP proceedings, the Special Prosecution Unit (SPU), has no identifiable client; the State claims that requiring it to respond to Young's requests necessarily requires its attorneys to disclose their mental impressions, opinions, conclusions, or legal theories. The State's Brief states:

> The attorneys in SPU have no real, identifiable client. The civil division of SPU is, essentially, a law office. But we have no client. There is no client who directs our activities. There is no client to whom we answer. There is no client that sits with us at counsel table during trial. This places us in a [] unique situation in that there is no client to whom we can turn for responses to requests for admissions.
> Because there is no person, client, or party, who can respond to requests for admissions, the trial court did not abuse its discretion when it entered the protective order.

While the SPU argues it has no real client, the petition seeking Young's commitment indicates that the SPU's client is the State of Texas. In its brief, the State asks that we grant relief to the State. Thus, it appears from the record that the State, not the SPU, is the party to the commitment proceedings that involve Young.

The civil division of SPU is responsible for initiating and pursuing civil commitment proceedings under the SVP statute. *See* Tex. Health & Safety Code Ann. § 841.004 (West 2010). Absent conflicts with other provisions of the SVP statute, civil commitment proceedings are subject to the rules of procedure for civil

4

cases. *See* Tex. Health & Safety Code Ann. § 841.146(b) (West 2010). We have held that absent an express statutory exception, the rules of discovery apply to SVP proceedings. *See In re Commitment of Malone*, 336 S.W.3d 860, 862 (Tex. App.—Beaumont 2011, pet. denied). We find nothing in the SVP statute to support the State's argument that it is exempt from responding to requests for admission. *See generally* Tex. Health & Safety Code Ann. §§ 841.001-.151.

Treating the State as the SPU's client and treating the State as a party to these proceedings treats the State in a manner consistent with settled Texas precedent. "As a general rule, the State litigates as any other party in Texas courts[.] 'When the [S]tate becomes a litigant in the courts[,] it must observe and is bound by the same rules of procedure that bind all other litigants, except where special provision is made to the contrary.'" *Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 7 (Tex. 1974) (quoting *Tex. Co. v. State*, 281 S.W.2d 83, 90 (Tex. 1955)). We hold that the State does not enjoy any general exemption from the requirement that it respond or object to requests for admissions under the same rules that apply to other litigants in civil cases.

Because the trial court did not state the basis of its ruling when it ruled on the State's motion for protective order, we are required to review the State's other objections to Young's requests to determine if they provide a reasonable basis to

uphold the trial court's decision denying Young's motion to compel. Twelve of Young's admissions are the subject of core work-product objections lodged by the State (requests nine, ten, nineteen, twenty, and twenty-two through twenty-nine). Core work product is protected from discovery by Rule 192.5 of the Texas Rules of Civil Procedure. These twelve requests ask that the State admit certain matters related to what the State (not its attorneys) had done, offered, or required of Young, to admit that Young's entire criminal record was contained in certain records, to admit whether the State had evidence that Young had engaged in sexual misconduct or sexual offenses while he was incarcerated, and to admit whether the State was aware of certain information about sexually violent predators other than Young.

Rule 192.5 defines core work product as "the work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories[.]" Tex. R. Civ. P. 192.5(b)(1). However, Rule 192.5(c)(1) provides that information concerning experts, trial witnesses, witness statements, and contentions, matters that are all discoverable under rule 192.3, are not protected by the work product privilege. *See* Tex. R. Civ. P. 192.3, 192.5(c)(1). Additionally, the rules of procedure specifically allow a party to request disclosure of legal theories and

factual bases of the opposing party's claims. *See* Tex. R. Civ. P. 194.2(c). We conclude the twelve requests at issue do not require the State's attorneys to disclose their mental impressions, opinions, conclusions, or legal theories about Young's case. We conclude the requests at issue did not seek discovery of core work product, and that a core work product objection provides an insufficient basis to sustain the trial court's ruling.

The State also argued that twelve of Young's requests were not relevant to the issues in dispute (requests one through nine, twelve, nineteen, and twenty-nine). Only two of Young's twelve requests (number twelve and nineteen) relate specifically to Young. The others (one through nine and twenty-nine) address the State's experience with persons who were found to be sexually violent predators, a class of persons that, as of the date of the trial, did not include Young.

At the pre-trial hearing on the State's motion, Young did not explain to the trial court why the ten requests that sought information about the State's experience with sexually violent predators other than Young were relevant to the issues in his case. Although Young argues that his requests about other sexually violent predators were reasonably calculated to lead to the discovery of relevant evidence, his brief does not explain how information about other sexually violent predators is relevant to whether he suffers from a sexual abnormality that makes

him likely to engage in a predatory act of sexual violence, the issue for the jury in his trial. Additionally, Young has not explained why the information about other sexually violent predators was relevant to any of the specific terms of the trial court's commitment order. The trial court could reasonably have denied Young's motion to compel a response to these ten requests for admission on the basis that the admissions at issue were not relevant. We hold the trial court did not abuse its discretion by allowing the State not to respond to requests one through nine and twenty-nine.

The remaining two requests subject to a relevance objection—requests twelve and nineteen—ask for admissions that relate specifically to Young. Request twelve asks that the State admit it had no evidence that the primary purpose of Young's qualifying sexual offenses was victimization. However, to the extent the charge addresses victimization, the jury was asked to decide whether victimization would motivate him to commit future predatory acts; it did not ask the jury to decide whether victimization had motivated him in the past. Moreover, there is no jury question regarding whether the State has or does not have any evidence, as that issue relates to a question of law. As a result, request twelve does not concern a matter directly relevant to the issue before the jury. Because Young failed to explain how request twelve was relevant to the issues before the jury, we conclude

the trial court did not abuse its discretion when it chose to allow the State not to answer the request.

Request nineteen asks the State to admit that Young, on release from prison, would be required to register as a sex offender. Although neither party has addressed the relevance of this request to the issues in Young's case, it appears that Young could have used an admission about registering to argue that the State had sufficient control over registered sex offenders so that further controls would not be necessary to prevent Young from committing future predatory acts of sexual violence. With respect to request nineteen, we will assume without deciding that the State should have been required to file a response. We address separately whether Young has shown he was harmed because he did not obtain a response to request nineteen.

The State objected to thirty-six of Young's requests (numbers eleven, thirteen through eighteen, twenty-one, and thirty through fifty-seven) because they "are all things that are best answered by the psychological and/or psychiatric experts who have been designated by Petitioner in this case, which Respondent will have the opportunity to do at the time of the expert's deposition." The State's motion for protective order concludes that these requests seek to discover information that is protected by the work-product privilege.

With respect to these thirty-six requests, Young suggested in the trial court that "[o]ne party cannot limit the method or methods by which the other party chooses to conduct discovery." However, the reasonable inquiry required of a party in formulating responses to requests for admissions does not require that the attorneys ask its designated experts for the information that may be needed to answer requests for admission. *See* Tex. R. Civ. P. 195.1, 198.2(b). Instead, discovery from experts is permitted "only through a request for disclosure under Rule 194 and through depositions and reports as permitted by this rule." Tex. R. Civ. P. 195.1.

Based on the arguments that Young presented to the trial court, the trial court could reasonably conclude that Young improperly used requests eleven, thirteen through eighteen, twenty-one, and thirty through fifty-seven in an effort to conduct discovery against the State's designated experts. We conclude the trial court did not abuse its discretion by granting the State's motion with respect to requests eleven, thirteen through eighteen, twenty-one, and thirty through fifty-seven.

*Harmless Error*

We must determine if the trial court's failure to require the State's response to requests ten, nineteen, twenty, and twenty-two through twenty-eight probably

10

caused the rendition of an improper judgment or probably prevented appellant from properly presenting his case to the court of appeals. *See* Tex. R. App. P. 44.1(a). First, we address Young's argument that depriving him of these answers has made it impossible for him to assess his alleged harm.

With respect to eight of the ten requests (requests twenty, and twenty-two through twenty-eight), the record shows that Young received the benefits of other forms of discovery. For example, with respect to Young's requests addressing information about his criminal and treatment histories (request twenty, and requests twenty-two through twenty-eight), the record reflects that Young had access to the Multi–Disciplinary Team referral packet, "which generally contains the offender's psychological evaluation, parole reviews, penitentiary packets, educational records, sex offender treatment program records or evaluations, medical records, and prison disciplinary records." *Perez*, 2013 WL 772842, at *6*. Additionally, Young could have provided Young's attorneys with information about Young's criminal and treatment histories. Finally, the record reflects that Young took the depositions of the State's experts, so he had the opportunity to discover how the State's experts had relied on Young's criminal and treatment histories in forming their respective opinions. Thus, the record does not show that

11

Young was deprived of any significant benefit in preparing his case for trial because the trial court did not require the State to respond to these eight requests.

With respect to the two remaining requests, requests ten and nineteen, we conclude that the outcome in Young's trial would not have changed had the State responded to these two requests. Request ten asks the State to admit that it knew where ninety-five percent of the persons found to be sexually violent predators were living. Request nineteen asks that the State admit that Young, on release from custody, would be required to register as a sex offender.

Requests ten and nineteen are unrelated to matters that go to the heart of the issues in dispute. For example, whether the State knew where ninety-five percent of the persons found to be sexually violent predators were living appears unrelated to whether Young has a behavioral abnormality that makes him likely to commit a future sexual offense. The degree to which Young might be subject to being controlled through sexual offender registries is a matter that could have been addressed by the witnesses who testified at Young's trial. Because none of the experts were asked to address the issue, it appears that Young did not think the matter was one that went to the heart of his case.

We conclude that the trial court's failure to require the State to respond to the ten requests at issue did not cause the rendition of an improper judgment or

12

prevent Young from presenting his case on appeal. *Id.*, *see* Tex. R. App. P. 44.1(a). We overrule issue one.

*Young's Requests for Production to the State*

In issue two, Young complains that the trial court refused to compel the State to produce documents in response to requests to produce eighteen and nineteen, asking for "[a]ll **documents concerning** the procedure for selecting which of the offenders referred to the Special Prosecution Unit will be prosecuted for civil commitment[]" and "[a]ll **documents** reviewed, submitted, and/or considered in the process of deciding that Respondent would be prosecuted for civil commitment." The State objected to these requests, asserting the documents were not relevant and that the requests invaded its privilege against producing work product. Young filed a motion to compel, arguing that these requests were "relevant to the issue of whether the Special Prosecution Unit is applying Chapter 841 of the Texas Health & Safety Code in accord with Respondent's rights of equal protection and due process."

Young argues that in the absence of evidence supporting the State's objections, the trial court erred in denying his motion to compel. *See* Tex. R. Civ. P. 193.4(a). But, supporting evidence is not always needed to support a trial court's discovery rulings. *See In re Union Pac. Res. Co.*, 22 S.W.3d 338, 341 (Tex. 1999)

13

("As the rule recognizes, evidence may not always be necessary to support a claim of protection from discovery."). "Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). Consequently, "requests must be reasonably tailored to include only matters relevant to the case." *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). "The trial court must make an effort to impose reasonable discovery limits." *Id*. "It is the discovery proponent's burden to demonstrate that the requested documents fall within the scope-of-discovery of Rule 192.3." *In re TIG Ins. Co.*, 172 S.W.3d 160, 167 (Tex. App.—Beaumont 2005, orig. proceeding). Trial courts have the discretion to refuse to compel discovery if the information being requested by the interrogatory or request at issue is so inclusive that responding would require matters to be included that are unlikely to fall within the scope of discovery that governs the parties' dispute. *See In re Christus Health Se. Tex.*, 399 S.W.3d 343, 348 (Tex. App.—Beaumont, 2013, orig. proceeding).

Without hearing evidence, the trial court could also determine that responding to request eighteen would require the State to produce documents that would not be relevant to the issues to be decided at Young's trial. The trial court,

14

without hearing evidence, could also conclude that request nineteen includes matters that are protected as work product—the procedure used by the SPU in selecting the persons that it would seek to civilly commit. Additionally, the trial court could have concluded that documents pertaining to other sex offenders were not relevant to the issues that the jury would decide in Young's case. Because request eighteen sought documents about the referrals of persons other than Young, the trial court could have reasonably concluded that the requests would require the State to produce documents that were not relevant to Young.

Request nineteen sought documents reviewed or considered in deciding whether Young would be prosecuted for civil commitment. Under the SVP statute, the attorneys are involved in the decision to file the civil commitment proceeding, and the matters they considered in doing so are subject to the work product privilege. *See* Tex. R. Civ. P. 192.5(a) (defining work product); *see also* Tex. Health & Safety Code Ann. § 841.041(a) (West 2010) ("If a person is referred to the attorney representing the state under Section 841.023, the attorney may file … a petition alleging that the person is a sexually violent predator and stating facts sufficient to support the allegation."). With respect to request to produce eighteen and nineteen, we conclude the trial court did not abuse its discretion by denying Young's motion to compel. We overrule issue two.

15

*The State's Requests for Admission to Young*

In issue three, Young contends the trial court abused its discretion in compelling him to answer nine of the State's requests for admission (requests ten through eighteen). These nine requests asked that Young admit or deny that he was charged, convicted, and sentenced in three separate criminal cases. Young objected, asserting the matters were inadmissible because he had entered pleas of nolo contendere on the cases addressed in the nine requests. *See* Tex. R. Evid. 410.

A personal plea of guilty to a criminal charge is admissible in evidence in a subsequent civil suit arising out of the same act, but a plea of nolo contendere is not. *See* Tex. R. Evid. 410(2); *Johnson v. Woods*, 315 S.W.2d 75, 77 (Tex. Civ. App.—Dallas 1958, writ ref'd n.r.e.); *see also* Tex. Code Crim. Proc. Ann. art. 27.02(5) (West 2006) (instructing that a plea of nolo contendere "may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based"). Rule 410 states that a plea of nolo contendere is inadmissible in a civil case, but the requests for admission do not ask Young to admit that he pled nolo contendere; the requests for admissions ask whether Young had been charged, convicted, and sentenced based on the three prior crimes. *See* Tex. R. Evid. 410. Nonetheless, Rule 410 is not intended to prevent the State from proceeding under a statute to impose civil

16

consequences that result from criminal convictions. *See, e.g., Turton v. State Bar of Tex.*, 775 S.W.2d 712, 715 (Tex. App.—San Antonio 1989, writ denied) (concluding that Rule 410 did not preclude admission of a nolo contendere plea in an action brought under the State Bar Act to suspend an attorney for conviction of a serious crime).

Before a person may be civilly committed, the State must prove that the person is a repeat sexually violent offender. *See* Tex. Health & Safety Code Ann. § 841.003(a)(1) (West 2010). Young's civil commitment proceeding is based, in part, on Young's prior convictions for sexually violent offenses; thus, the requests for admission asked about matters that the State was required to prove at trial. In SVP cases, the State may prove that the person was charged, convicted and sentenced for prior sexually violent offenses that were obtained based on pleas of nolo contendere. *See id.* § 841.003(b) (West 2010). Because the nine requests at issue are relevant to the State's case under the civil commitment statute, the trial court did not abuse its discretion by compelling Young's responses. We overrule issue three.

17

Trial Rulings

*Jury Selection*

In issue four, Young contends the trial court violated his statutory right "to appear at trial" because Young was not personally present in the courtroom when the trial court considered the parties' challenges for cause. *See* Tex. Health & Safety Code Ann. § 841.061(d) (West 2010) (providing that the person the subject of the commitment proceeding "the right to appear at the trial"). The record reflects that Young was present for the entire voir dire, but at the conclusion of the voir dire, the trial court asked to see counsel. While in chambers, in Young's absence, the trial court denied counsel's request to delay the proceedings to wait for Young, considered the parties' agreed strikes, and, with the agreement of the parties, the trial court struck eleven members of the array. However, when the trial court returned to the courtroom to question other members of the array individually, Young was present, and he remained present when the parties exercised their peremptory strikes.

Young argues "the right to appear at the trial," found in section 841.061(d)(1) of the Health and Safety Code, applies in the same manner as article 33.03 of the Texas Code of Criminal Procedure. Young correctly asserts that he was entitled to be present during jury selection, as jury selection in SVP cases is

governed by the Code of Criminal Procedure. Tex. Health & Safety Code Ann. § 841.146(a) (West 2010) (providing that "[t]he number and selection of jurors are governed by Chapter 33, Code of Criminal Procedure."). Article 33.03 of the Code of Criminal Procedure states that "the defendant must be personally present at the trial" unless he voluntarily absents himself after jury selection. Tex. Code Crim. Proc. Ann. art. 33.03 (West 2006).

When reviewing violations of article 33.03 that relate to the defendant's presence during jury selection, appellate courts consider whether the defendant's presence has a reasonably substantial relationship to his opportunity to defend. *Compare Jasper v. State*, 61 S.W.3d 413, 422-24 (Tex. Crim. App. 2001) (defendant's absence when jurors' excuses heard was harmless); *Hodges v. State*, 116 S.W.3d 289, 296-98 (Tex. App.—Corpus Christi 2003, pet. ref'd) (defendant's absence during peremptory strikes harmless where defendant later waived jury); *Bath v. State*, 951 S.W.2d 11, 22-23 (Tex. App.—Corpus Christi 1997, pet. ref'd) (defendant's absence when venire member qualified and juror exemptions heard was harmless); *Weber v. State*, 829 S.W.2d 394, 395-97 (Tex. App.—Beaumont 1992, no pet.) (defendant's absence when juror excuses heard was harmless), *with Sumrell v. State*, 326 S.W.3d 621, 624-27 (Tex. App.—Dallas 2009), *pet. dism'd improvidently granted*, 320 S.W.3d 338 (Tex. Crim. App. 2010) (defendant's

19

absence during individual questioning of jurors who expressed bias was harmful); *Bledsoe v. State*, 936 S.W.2d 350, 361 (Tex. App.—El Paso 1996, no writ) (defendant's absence during individual voir dire was harmful).

During all of the jury selection proceedings that occurred in open court, Young was physically present. Although Young was not present when the trial court determined who the attorneys for the parties had agreed to dismiss, he has not argued and it has not been shown that his absence affected the makeup of the jury. Accordingly, on the face of this record, we conclude that Young's brief absence during jury selection did not substantially interfere with his ability to defend against the State's case. Because Young has not shown that he was harmed by his brief absence in chambers when the parties discussed their agreed strikes, we overrule issue four.

*Certified Questions from Deposition*

In issue five, Young contends the trial court should have required the State's testifying psychologist, Dr. Antoinette McGarrahan, to answer several questions she was asked during her deposition. The transcript of Dr. McGarrahan's deposition reflects that the court reporter recorded a number of questions for later ruling by the trial court. The trial court heard Young's motion to compel Dr. McGarrahan's answers shortly after jury selection and before trial testimony

20

began; Young's attorney secured rulings on four of the unanswered questions (questions one through four) during the hearing on the motion to compel.

On appeal, Young complains that the trial court should have required Dr. McGarrahan to answer questions three and four, and questions thirteen through sixteen. However, Young did not secure rulings from the trial court with respect to questions thirteen through sixteen. As a result, Young failed to preserve his complaints regarding questions thirteen through sixteen for appellate review. *See* Tex. R. App. P. 33.1 (providing that error preservation requires a party to obtain a ruling from the trial court as a prerequisite to presenting a complaint for appellate review).

The trial court denied Young's motion with respect to questions three and four. These questions ask:

- [Question 3] Dr. McGarrahan, would you agree that as of August 31st, 2010, it was the position of the Council on Sex Offender Treatment that no one adjudicated of a sexually violent predator -- adjudicated as a sexually violent predator in Texas has been charged with or convicted of a new sex crime?

- [Question 4] Let's assume that the Council on Sex Offender Treatment is right, that as of August 31st, 2010, no person adjudged a sexually violent predator in the [S]tate of Texas has either been arrested for or convicted of a subsequent sexually violent offense. Wouldn't including those statistics into the group that you characterize as being inherently low-risk lower the risk even further?

21

Young contends counsel for the State, during Dr. McGarrahan's deposition, improperly instructed Dr. McGarrahan not to answer these questions. The record reflects that the State's attorney did instruct her witness not to answer these questions.

Attorneys, with limited exceptions, are not allowed to instruct that a witness not answer a question during a deposition. Rule 199.5(f) provides: "An attorney may instruct a witness not to answer a question during an oral deposition only if necessary to preserve a privilege, comply with a court order or these rules, protect a witness from an abusive question or one for which any answer would be misleading, or secure a ruling[.]" Tex. R. Civ. P. 199.5(f).

During the hearing on Young's motion to compel, the State argued any answer to question three would be misleading "as to anything that has to do with Mr. Young's behavioral abnormality." Young argued "we were attempting to discover Dr. McGarrahan's rate of error in her evaluations[,]" to which the trial court noted, "You should have asked that question because you didn't ask that question." Young argued the answer "goes to the credibility of the witness." The trial court noted Young phrased the question to ask if Dr. McGarrahan agreed that another party took a position, which created a problem because "[i]f you want to get into that, you've got to get those people and bring them in here and have them

testify about it[.]" The trial court found that question four also requested a misleading response.

Questions three and four refer to the 2010 biennial report prepared by the Council on Sex Offender Treatment. *See* Tex. Occ. Code Ann. § 110.160 (West 2012); Council on Sex Offender Treatment, Biennial Report Regarding the Council on Sex Offender Treatment September 1, 2008 – August 31, 2010 (2010) (available at http://www.dshs.state.tx.us/csot/default.shtm). Young's attorney showed the 2010 report to Dr. McGarrahan during her deposition, and determined in the deposition that Dr. McGarrahan used two actuarial tests in evaluating Young, the Static-99R and the Minnesota Sex Offenders Screening Tool Revised (MnSOST). The 2010 report contains detailed information about the Council's activities, and it includes a statement about recidivism rates, but the document is a report to the Governor, Lieutenant Governor, and Speaker of the House of Representatives, not an actuarial instrument or other scientific peer-reviewed document. *See* Tex. Occ. Code Ann. § 110.160; Council on Sex Offender Treatment, Biennial Report Regarding the Council on Sex Offender Treatment September 1, 2008 – August 31, 2010 (2010) (available at http://www.dshs.state.tx.us/csot/default.shtm). On appeal, Young argues that his questions concern Dr. McGarrahan's potential rate of error, making it a matter that

23

is discoverable in a deposition. *See* Tex. R. Civ. P. 192.3(e)(4) (providing that a party may discover a testifying expert's mental impressions and opinions formed or made in connection with the case, and any methods used to derive them).

The record does not support Young's claim that questions three and four are relevant to determining Dr. McGarrahan's error rate in applying the Static-99R and the MnSOST.[1] A report addressing the general success rate of sex offender treatment does not speak to Dr. McGarrahan's predictive accuracy for a person who has not yet been committed to a program of sex offender treatment. By seeking to use the Council's report to measure the accuracy of Dr. McGarrahan's application of the Static-99R and the MnSOST, Young's questions present a fallacy of distribution that suggests Young's recidivism risk can be extrapolated from statistics using recidivism statistics derived by actuarial instruments that have been used to measure the recidivism risks of a treated population.[2] In the context of

---

[1]We do not suggest that the Council's report would not be relevant under any circumstances. The civil commitment proceeding concerns not only the determination that a person is a sexually violent predator but also the terms of commitment ordered by the trial court if the person is civilly committed. *See* Tex. Health & Safety Code Ann. § 841.003(a), § 841.082(a)(8) (West Supp. 2012). Young neither asked Dr. McGarrahan if she was familiar with the report nor did he ask her to explain it.

[2]For example, if no schoolboy who receives the chicken pox vaccine subsequently develops chicken pox, it does not follow that a schoolboy should not be vaccinated because he is not at risk for chicken pox. In Young's case, there was

the arguments presented to the trial court, we conclude that the trial court's decision about the questions as being misleading is supported by the record and was reasonable. We overrule issue five.

## Trial Rulings

### *Opening Statement*

In issue six, Young contends the trial court abused its discretion by permitting the prosecutor to summarize the evidence during his opening statement. The rule of civil procedure controlling the order of proceedings in a civil trial provides that the party with the burden of proof on the whole case "shall state to the jury briefly the nature of his claim or defense and what said party expects to prove and the relief sought." Tex. R. Civ. P. 265(a). The State's opening statement, which consumes thirteen pages of the record, lacks the brevity mentioned in Rule 265(a). The trial court admonished counsel to be brief several times before granting Young's request for a running objection. Counsel continued to describe another sexual offense and prison infractions that he expected to present to the jury

---

no evidence to show the rate of recidivism for persons who never received treatment, so it is an unknown. Nor is there any evidence indicating that the rate of recidivism in a population that had received treatment could be used to extrapolate a rate of recidivism for a population that had not been treated.

25

during trial, described the testimony he expected the State's experts would present, and explained the State's burden of proof.

Generally, by detailing the evidence during opening statement, counsel may place matters before the jury before the trial court can determine its admissibility; as a result, an opening statement that discusses evidence that may never be admitted carries the potential of confusing the jury when the evidence the trial court admits differs from the evidence counsel mentioned in opening statement. *See Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 170-71 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.). On appeal, the State does not defend the degree of detail that is found in its opening statement; instead the State argues the error in allowing its attorney to provide the jury with details about what the evidence would show was harmless. *See* Tex. R. App. P. 44.1(a)(1). Young argues that he was harmed because introducing details concerning sexual assaults described in the opening statement prejudiced the jury.

In this case, counsel's opening does not vary in any significant manner from the evidence the trial court admitted during Young's trial. Counsel's description of Young's prior sexual offenses and mental impairment, mentioned by counsel during opening statement, are consistent with the evidence the trial court admitted during trial on these matters. When evidence consistent with the details described

26

in the opening statement is developed during the trial, the trial court's error in overruling an objection complaining about counsel's mention of the evidence in opening statement is harmless. *See Guerrero v. Smith*, 864 S.W.2d 797, 800 (Tex. App.—Houston [14th Dist.] 1993, no pet.). Because the evidence admitted during trial does not vary significantly from the matters that State's counsel discussed in opening statement, we conclude that any error in the trial court's allowing State's counsel to tell the jury in opening statement how the State intended to prove its case was harmless. *See* Tex. R. App. P. 44.1. We overrule issue six.

Displaying Exhibits

In issue seven, Young complains that the trial court erred when, just before the attorneys made their opening statements, it overruled his objection to the State's display of four exhibits during opening argument. Young did not identify the exhibits by number when discussing his objection with the trial court; Young suggests the documents consisted of Young's judgments and the curricula vitae of the State's expert witnesses. Additionally, the record does not reveal whether State's counsel actually displayed these four exhibits to the jury during opening argument.

Young argues the trial court's ruling allowed the State to show the jury that his convictions were obtained on pleas of nolo contendere.[3] It is not clear from the record whether the jury saw any of the four exhibits at issue during the State's opening argument. We hold that Young failed to preserve error regarding issue seven. *See* Tex. R. App. P. 33.1. Issue seven is overruled.

*Expert Testimony*

In issue eight, Young contends the trial court impermissibly restricted his right to cross-examine the State's testifying psychiatrist, Dr. Michael Arambula, about his rate of error. The trial court did not allow Young's counsel to ask Dr. Arambula the following questions:

- Your procedure has not been tested for accuracy?

- Are you aware of what your rate of error is regarding your opinions in behavioral abnormality evaluations?

- Are you concerned at all with your rate of error being so high at one hundred percent? Why or why not?

- And no person that you have found to have a behavioral abnormality has reoffended sexually upon release?

---

[3]When cross-examining the witnesses who testified, Young's counsel introduced the jury to the fact that Young's convictions were obtained through pleas of nolo contendere as well as the legal distinction between pleas of guilty and nolo contendere. The State did not introduce these matters during its direct examinations of the witnesses.

The jury's determination that Young is a sexually violent predator relies upon the opinion testimony of the State's experts; therefore, questions about the general accuracy of Dr. Arambula's opinions concern a subject matter that relates directly to his trial testimony; it is a relevant inquiry. *See* Tex. R. Evid. 401 (relevant evidence tends to make the existence of a fact of consequence more or less probable than it would be without the evidence). A witness may be cross-examined on any matter relevant to any issue in the case. *See* Tex. R. Evid. 611(b).

Error may not be based on a ruling that excludes evidence unless "the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1(a)(1). "To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex. App.—El Paso 2002, no pet.). Young's counsel failed to make an offer of proof, and he has not identified the answers he expected to receive from Dr. Arambula to the proffered questions.[4] Without an offer of proof, we cannot determine whether the

---

[4]We have repeatedly rejected challenges concerning the reliability of Dr. Arambula's opinion testimony in civil commitment trials. *See, e.g. In re Commitment of Hill,* No. 09-11-00593-CV, 2013 WL 772834, at **4-7 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (mem. op.); *In re Commitment of Kalati*, 370 S.W.3d 435, 436-40 (Tex. App.—Beaumont 2012, pet. denied); *In re*

exclusion of the evidence was harmful. *See Perez*, 74 S.W.3d at 66-67. Because Young has not shown that the exclusion of the evidence was harmful, we overrule issue eight.

In issue nine, Young contends the trial court abused its discretion in allowing Dr. McGarrahan to describe the details of Young's sexual offenses. The trial court admonished the jury: "Hearsay normally is not admissible; however, certain hearsay information contained in the records reviewed by the experts is allowed into evidence through expert testimony. Such evidence is admitted only for the purpose of showing the basis of the expert's opinion."

Rule 705(a) of the Texas Rules of Evidence allows an expert to disclose the facts or data on which the expert bases an opinion. *See* Tex. R. Evid. 705(a). If the trial court admits underlying facts or data that would otherwise be inadmissible, such as hearsay, the court, on request, is required to give the jury a limiting instruction. *See* Tex. R. Evid. 705(d). When the trial court gives the jury a limiting instruction, we presume the jury followed it. *See In re Commitment of Day*, 342 S.W.3d 193, 198-99 (Tex. App.—Beaumont 2011, pet. denied). In light of the limiting instruction, the admission of the testimony explaining the data on which

---

*Commitment of Cox*, No. 09-11-00100-CV, 2012 WL 759049, at \*\*4-7 (Tex. App.—Beaumont Mar. 8, 2012, pet. denied) (mem. op.); *In re Commitment of Day*, 342 S.W.3d 193, 204-06 (Tex. App.—Beaumont 2011, pet. denied).

Dr. McGarrahan based her opinion was not an abuse of discretion. We overrule issue nine.

Having overruled all of Young's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on April 4, 2013
Opinion Delivered September 5, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.