

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00452-CV

_____

IN RE: THE COMMITMENT OF JULIUS D. MARSHALL

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. D372-S-13395-16

Before Sudderth, C.J.; Meier and Gabriel, JJ.
Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION[1]

In four issues, Appellant Julius D. Marshall appeals the order of civil commitment following his sexually-violent-predator civil commitment proceeding. *See* Tex. Health & Safety Code Ann. § 841.001 (West 2017).

In January 2007, Marshall pleaded guilty to two charges of sexual assault and received deferred adjudication. He quickly violated the terms of his probation, and in March 2007 he was sentenced to twelve years' incarceration. As he approached the date of his release, the State petitioned to have him civilly committed. Two witnesses testified at the trial—Marshall and Dr. Timothy Proctor, a forensic psychologist. The jury found that Marshall was a sexually violent predator, and the trial court ordered him civilly committed. For the reasons discussed below, we affirm.

## Background

### I. Marshall's childhood

By all accounts, Marshall had a rough childhood. He grew up in poverty in a dangerous neighborhood in Shreveport, Louisiana. He did not know his father and was raised by his mother, aunt, and two older sisters, who exposed him to drugs, alcohol, and sex at an early age.

Likely as a result of that exposure, Marshall developed a significant drug problem at an early age. He testified that he started smoking and drinking when he

---

[1] *See* Tex. R. App. P. 47.4.

was only five years old and began using heavy drugs to "escape reality" when he was eight or nine. At trial, he admitted to having used acid, marijuana, alcohol, and prescription pills over the years and testified that he drank alcohol and used marijuana every day and ecstasy and cocaine every weekend.

In addition to his substance abuse problems, Marshall became involved with gang culture early on and displayed a number of behavioral problems as a child. When he was eight, he became involved with the Crips and damaged and vandalized property, including one instance when he set a dumpster on fire for fun. When he was nine, he was arrested for stealing and spent three months in juvenile detention. By the time he was eleven, he became an official member of the Crips. He was in and out of school—he was kicked out of school in sixth grade after he broke a classmate's arm in a fight and was kicked out of school again in eighth grade when he broke a classmate's leg during another fight. He was sent to juvenile detention a second time after being charged with assault in connection with the eighth-grade fight and he was placed on probation for a term intended to last until he was 21 years old. But Marshall continued to get in trouble for truancy, theft, and running away from home, and he was involved in gang-related violence.

## II. The 2007 sexual assault convictions

Marshall moved to Texas when he was 17 and soon after, he sexually assaulted two women, Alicia[2] and Brandy.

According to Proctor's review of the offense records, Alicia was an 18-year-old woman of "low mental functioning," and Marshall forced her to have sex with him at least twice and attempted to force her to have sex with him on another occasion. Proctor testified that the records indicated "that [Marshall] used force and that there was an instance that . . . occurred on a playground where he forced down her pants and forced her to bend over and forced sex on her from behind." Alicia became pregnant after the incident. While Marshall reportedly told Proctor that Alicia's mental functioning was "overblown," Proctor testified based on his review of a recorded statement made by Alicia in 2005 that "it was obvious . . . that she was somebody of low mental functioning." He noted that Alicia could not identify her address or what street she lived on when asked for that information by the police in the interview.

At the civil commitment trial, Marshall claimed that at the time of the incident, Alicia had been his girlfriend for about eight months and the sex was consensual, which contradicted the guilty plea he entered to the sexual assault charge in 2007. It

---

[2]To protect Alicia's and Brandy's anonymity, we use aliases. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

4

also contradicted offense records reporting Alicia's statements that she was not interested in Marshall and they were not dating.

Marshall's sexual assault of Brandy took place shortly after his September 2005 assault of Alicia. Around 3:00 a.m. on Christmas morning in 2005, Marshall assaulted Brandy, a prostitute, by grabbing her as she walked down the street, pulling her to the side, forcing off her pants and shoes, and forcing her to engage in sex with him. According to records, a witness heard Brandy screaming and "heard him saying things that suggested force," such as "shut up and take my dick," and the witness called 911. Marshall admitted that he had sex with Brandy but denied that he did so by force. In Marshall's version of events, he had had sex with Brandy before, sometimes in exchange for drugs and other times when he paid her, and the Christmas morning incident was no different—he claimed that he offered Brandy drugs in exchange for sex. According to Proctor, Brandy denied knowing Marshall.

In January 2007, Marshall pleaded guilty to both charges of sexual assault and received deferred adjudication. His freedom was short-lived, as his probation was revoked in March 2007 for his failure to register as a sex offender and for testing positive for marijuana and alcohol use. He was sentenced to twelve years' confinement for each sexual assault charge and to five years' confinement for the separate charge of failing to register as a sex offender.

### III. Marshall's behavior in prison

Marshall developed a lengthy disciplinary record while serving his time in prison. According to Proctor's review, Marshall's prison records included 90 major disciplinary cases, and Marshall admitted that these infractions included fighting, refusing to obey orders, creating disturbances, refusing to work, being out of place, possessing contraband, possessing tobacco products, testing positive for marijuana, stealing, and sexual misconduct. Marshall admitted that he threatened to harm correctional officers and that he even broke a correctional officer's jaw by repeatedly punching him during a fight. His drug use continued—he admitted to smoking marijuana daily and to using K2 on occasion while in prison—and he continued to be involved in gang activity.

At least 26 of Marshall's disciplinary infractions were for sexual misconduct. Proctor testified that Marshall had intentionally exposed himself and masturbated in front of other people in prison, particularly female correctional officers. Marshall admitted at trial that he purposely masturbated in front of female correctional officers as often as twice a week and that, in his opinion, some of the female officers "entice[d] him] into masturbating." He also admitted that he was not written up for every instance of his masturbating in front of officers. According to Proctor, this behavior was continuous throughout Marshall's incarceration, through various prison units and toward different correctional officers, and as a result Marshall was only allowed to

6

have "[v]ery limited" exposure to women in prison and no contact with female civilians.

Despite his history of misconduct and his admission that he masturbated in the past as often as two or three times a day, Marshall denied having a high sex drive. He also denied having a problem with masturbation, but he answered "Yes, obviously," when asked if he wished he masturbated less.

As a result of Marshall's repeated disciplinary problems, he was denied access to education and treatment programs (including sex offender treatment), he was not permitted to work, he lost good conduct time, he was denied parole, and he spent approximately eight of his twelve years of incarceration in administrative segregation.

## IV. The trial

### A. Marshall's testimony

At trial, Marshall professed that he had "a lot of regrets" about the trouble he caused as a child and admitted that his behavior was wrong. But he did not express remorse about the 2005 sexual assaults of Alicia and Brandy, insisting instead that both incidents were consensual. He also denied having a drug problem or being a sex offender and testified that he did not need any substance abuse or sex offender treatment.

### B. Proctor's assessment

Proctor testified at length regarding his evaluation of Marshall. Proctor explained that he conducted an almost three-hour interview with Marshall and

7

reviewed documents including police records related to the 2005 sexual assaults, witness statements (including those by Alicia and Brandy), prison records, medical records, court documents, a record of a prior psychological evaluation, and Marshall's deposition in this case. He also conducted actuarial tests. Based on his evaluation, Proctor opined that Marshall had a behavioral abnormality that made him likely to engage in a predatory act of sexual violence.

Proctor listed several factors that he considered in making this determination. In particular, he emphasized the nature of Marshall's sexual deviancy and Proctor's diagnosis of Marshall as a psychopath, which he described as a severe version of antisocial personality disorder.

Several characteristics of Marshall's sexual deviancy stood out to Proctor. He noted that Marshall was not related to his victims and that one (Brandy) was a stranger to him. This was significant because it indicated that Marshall's potential victims could be anyone. Proctor also emphasized the continuing nature of Marshall's sexually violent behavior, especially his continuing to engage in sexual misconduct in prison. In Proctor's view, this evidenced a high sex drive and Marshall's inability to control himself despite the obvious consequences he could receive in prison. Proctor labeled Marshall's persistent sexual misconduct in prison as a "really important risk factor."

According to Proctor's evaluation, Marshall's sexual deviancy was a partial manifestation of his antisocial and psychopathic personality. Proctor described a

8

person with antisocial personality disorder as "somebody who violates the rights and rules of others, breaks rules, doesn't follow the rules and regulations of society, is aggressive, impulsive, dishonest. It starts as a juvenile and continues on of not complying with the rules and - - and laws of society." He then described psychopathy as "a more severe form of antisocial personality" that has many aspects and is characterized by "somebody who breaks rules repeatedly both early on and as they get older, who's aggressive, who is - - engaging in things like lying." He elaborated, "[I]t has more of the emotional component that goes along with someone who is a psychopath of them having a very high opinion of themselves, having a very - - what we call grandiose opinion of themselves and their abilities." And he described psychopaths as "[o]ften attempt[ing] to be c[u]nning and manipulative[, c]old and callous and lacking in empathy[, i]rresponsible."

Proctor used the Hare Psychopathy Checklist-Revised (PCLR), Static-99R, and Risk for Sexually Violent Protocol (RSVP) to assist in his diagnosis of Marshall as a psychopath. Proctor testified that PCLR is a tool used to determine if someone is a psychopath using a list of extensively researched factors that include pathological lying, being grandiose, and being irresponsible. It uses a scale of zero to 40, and most psychopaths score above a 30. Proctor scored Marshall as a 33. He testified that, in terms of the general prison population, Marshall's score of 33 was "very high" and in the 94th percentile.

Proctor described the Static-99R as a "risk assessment measure" that used research-based factors that "tended to separate people who committed another sex offense versus those who didn't re-offend." The Static-99R takes into account ten factors, including the offender's age, the number of previous sex offenses, the number of times the offender had been sentenced for any kind of offense, and whether the offender has ever had a long-term (more than two years in duration), live-in romantic relationship. Proctor gave Marshall a score of six, which placed him in the "well-above-average risk range, which is the highest of the range." According to Proctor, a typical sex offender scores as a two.

Finally, Proctor utilized the RSVP, which he described as a list of risk factors used to determine an offender's risk level. In addition to Marshall's sexual deviancy as discussed above, Proctor took into account the following:

- Marshall's young age. He was 30 at the time of trial and Proctor testified that people older than 35 generally have a lower risk of reoffending.

- Marshall's lack of involvement in any long-term, live-in intimate relationships.

- Marshall's substance abuse problems.

- Marshall's history of violent and suicidal thoughts and gestures, difficulties managing stress, poor coping skills, lack of self-awareness, and inability to plan for the future.

- Marshall's affiliations with "people that are a bad influence, including continued involvement in a gang."

- Marshall's limited employment history.

- Marshall's lack of sex offender or substance abuse treatment.

- Marshall's problems with supervision and authority, especially as demonstrated through his extensive prison disciplinary history.

- Marshall's minimization and denial of the 2005 sexual assaults and his sexual misconduct in prison.

In summary, Proctor testified that Marshall was "somebody . . . that is very prone to acting on his own impulses, his own desires, will break the rules and regulations of others for his own desires. Isn't concerned about other people, their well-being, their feelings the way you want to see someone. . . . [T]hey're not empathetic." He went on to say, "[W]ith that makeup . . . he's prone to doing what he wants to do. Like I said, if - - if somebody will give him what he wants, he'll take it. If - - if - - but if they won't, then he'll get it through force." Proctor concluded that Marshall was at a high or well-above-average risk of sexually reoffending.

## C. The jury's verdict and the trial court's order

The jury found that Marshall was a sexually violent predator. The trial court correspondingly ordered that Marshall be civilly committed.

## Discussion

Marshall brings four issues on appeal. In his first two issues, he challenges the legal and factual sufficiency of the evidence, respectively. In his third and fourth issues, he challenges the trial court's overruling of his rule 403 objections to certain evidence.

11

## I. Sufficiency of the evidence

We review sexually-violent-predator civil commitment proceedings for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *Id.*

While we have adopted the criminal standard for reviewing legal sufficiency of the evidence in these proceedings, we apply the civil standard for factual sufficiency. *See id.* Thus, when reviewing the factual sufficiency of the evidence to support the civil commitment order, we weigh all the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id.* (quoting *In re Commitment of Dever*, 521 S.W.3d 84, 85–86 (Tex. App.—Fort Worth 2017, no pet.)). We reverse only if, after weighing the evidence, we determine that the risk of an injustice remains too great to allow the verdict to stand. *Id.*

To have an offender civilly committed, the State must show beyond a reasonable doubt that the person (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. §§ 841.003 (defining "sexually violent predator"), 841.062(a) (imposing a "beyond reasonable

12

doubt" burden of proof) (West 2017). The evidence undoubtedly qualifies Marshall as a sexually violent offender because he has more than one conviction for a sexually violent offense—sexual assault. *See id.* § 841.003 (defining "repeat sexually violent offender" as a person who has been convicted of more than one sexually violent offense).

Marshall essentially argues that the evidence is legally and factually insufficient because he has never been released from prison, committed another sexual offense, and then been reconvicted and sentenced to another prison term. He emphasizes the fact that he was 18 when he went to prison and dismisses his extensive disciplinary history while in prison on the basis that masturbation is popular in prison. In Marshall's opinion, the evidence "may support a conclusion that [he] may have had a behavioral abnormality 12 years ago, but it does not support a conclusion that [he] suffer[ed] from a behavioral abnormality at the time of his commitment trial." His argument is entirely unconvincing.

Contrary to his argument, the evidence did establish that Marshall is a recidivist. While he was being investigated for sexually assaulting Alicia, he sexually assaulted Brandy. And a plethora of evidence displayed his defiance of authority and inability to follow the rules, factors that Proctor took into account in diagnosing Marshall as a psychopath. Proctor testified that Marshall's lengthy sexual misconduct disciplinary history was "unusual." And Marshall admitted that because of his continued disciplinary infractions he spent two-thirds of his time in prison in

13

administrative segregation, was prohibited from working or obtaining treatment, was denied parole, and lost good conduct time.

Proctor testified based on his education and experience to his review of the records, interview of Marshall, and diagnosis of Marshall as a psychopath. He explained the numerous factors that he considered, which included Marshall's sexual deviance, his traits and behavior as a psychopath, his antisocial traits, his ongoing substance abuse problems, his inability to control himself and lack of coping skills, and his problems with supervision and authority.

Although Marshall denied having sexually assaulted Alicia or Brandy (despite his guilty pleas to both crimes), he admitted to his violation of the terms of probation and to his extensive disciplinary problems in prison. Marshall even admitted at trial that he purposely masturbated in front of female correctional officers as often as twice a week and he thought that some of the female officers "entice[d him] into masturbating." Marshall was written up 26 times for sexual misconduct in prison, and he admitted on the stand that he was not written up for every instance of sexual misconduct he actually committed. Despite his candid admissions, Marshall testified that he did not need sex offender treatment.

The same is true of Marshall's substance abuse problems. Despite his admissions that he has used drugs since the startlingly young age of five and his continuing use while in prison, Marshall denied needing drug or alcohol treatment. Proctor emphasized Marshall's drug and alcohol use, explaining that alcohol and

14

drugs are "disinhibitors," meaning that "they allow things to come out in the person that they might normally hold back." He explained that this was especially concerning considering that Marshall already had trouble restraining his impulses.

And Proctor testified that Marshall is at a well-above-average risk of sexually reoffending, in the highest category of such risk.

Viewing all of this evidence in the light most favorable to the jury's verdict, it was legally sufficient; viewing it in a neutral light, it was factually sufficient. *See Short*, 521 S.W.3d at 914 (considering evidence of appellant's mental and personality disorders, lack of empathy, the nature of his offenses, his lack of treatment, and the expert's conclusions in holding evidence was sufficient); *In re Commitment of Wirtz*, 451 S.W.3d 462, 466–67 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding evidence was sufficient where appellant admitted to multiple sexual offenses, including exposing himself to children and an inappropriate relationship with a minor and continuing his sexual misconduct in prison, and forensic psychologist testified to diagnosis of pedophilia and giving appellant the highest possible score on the Static-99 scale). We therefore overrule Marshall's first and second issues.

## II. Rule 403 objections

In Marshall's third and fourth issues, he argues that the trial court erred by overruling his rule 403 objections to evidence of Alicia's and Brandy's statements to police and to evidence of his juvenile criminal history.

We review the admission of evidence for an abuse of the trial court's discretion. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Rule 403 provides that the trial court may exclude relevant evidence if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Additionally, an expert witness is precluded from disclosing otherwise inadmissible underlying facts or data if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect. Tex. R. Evid. 705. Factors to consider in determining whether evidence's probative value is outweighed by a risk of unfair prejudice "include the probative value of the evidence, the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence." *In re Commitment of Stuteville*, 463 S.W.3d 543, 555 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (quoting *In re Commitment of Anderson*, 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied)).

## A. Alicia's and Brandy's statements

Marshall objected to the following testimony by Proctor:

> Q. . . . [W]hat did you see in the records that's pertinent to your opinion?
>
> A. Right. And, obviously, there was a sexual offense involving [Alicia] that he was convicted of. She reported, in addition to that one instance, two other instances. One where he forced sex upon her a second time and another where he attempted to. She was said to be a person of low mental functioning who had suffered - -

Marshall's counsel objected to the testimony on the basis that it was hearsay and improper expert testimony, and that its probative value was outweighed by the risk of unfair prejudice.

Marshall's counsel also objected to the following question by the State posed to Proctor:

> Q. So what did you learn from the records and the recordings that you listened to concerning the offense with [Brandy] that's pertinent to your opinion that Mr. Marshall has a behavioral abnormality?

Marshall's counsel lodged the same objections to hearsay and improper expert testimony and under rule 403. He has not pursued his hearsay or improper expert testimony objections on appeal and instead has focused his argument on rule 403. Marshall argues in particular that any probative value of Proctor's challenged statements was outweighed by its unfairly prejudicial nature because Proctor had already testified to his reliance on Alicia's and Brandy's statements and "thus, there

17

was no need for the State to keep piling on the specific details other than to prejudice Mr. Marshall."

First, we remind Marshall that evidence, by its nature, is designed to be prejudicial. *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013).

Second, our sister courts have agreed that, in a sexually violent predator proceeding, "having an expert explain the facts he considered, including past sexual offenses, and how those facts influenced his evaluation, assists the jury in weighing the expert's opinion on the ultimate issue." *Stuteville*, 463 S.W.3d at 555 (citing *In re Commitment of Young*, 410 S.W.3d 542, 557 (Tex. App.—Beaumont 2013, no pet.)). The Beaumont court of appeals—which until 2015 was the only court to review these proceedings—has often upheld the admission of expert testimony about the details of underlying sex offenses. *Id.* at 556 (citing *In re Commitment of Alvarado*, No. 09-13-00217-CV, 2014 WL 1285136, at *10–11 (Tex. App.—Beaumont Mar. 27, 2014, pet. denied) (mem. op.); *In re Commitment of King*, No. 09-13-00255-CV, 2014 WL 346109, at *2–3 (Tex. App.—Beaumont Jan. 23, 2014, no pet.) (mem. op.)). As the facts are presented in this case, we agree with our sister courts.

Proctor explained that sexual deviancy, in addition to an antisocial lifestyle, is one of the biggest risk factors to consider in evaluating the risk for sexual reoffending. He also explained that examining the details of Marshall's convictions was important to evaluating his emotional and volitional capacity and that reviewing the records was important because offenders do not generally volunteer information about their own

18

sexual deviancy. This is true in this case—Marshall denied assaulting Alicia and Brandy and alleged that both sexual encounters were consensual. The trial court did not abuse its discretion by allowing Proctor to challenge Marshall's version of events by discussing his review of Alicia's and Brandy's statements, which also provided the jury with insight into Proctor's evaluation of Marshall. We therefore overrule Marshall's third issue.

## B. Juvenile criminal history

Marshall's fourth issue argues that the trial court abused its discretion by allowing Proctor's testimony to Marshall's criminal history as a juvenile because its probative value was outweighed by its unfairly prejudicial nature.

Although Marshall complains of Proctor's testimony that Marshall set a dumpster on fire when he was eight and was detained for vandalism, truancy, theft, and assault, Marshall only objected to the relevance of this testimony and did not object to it on the basis of Rule 403. He does not pursue his relevancy objection on appeal, instead arguing that its admission violated rule 403. By failing to object to that testimony under rule 403, he waived the argument he now presents on appeal. *See* Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1); *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g) (holding that a complaint is waived if a party fails to present a timely objection to the trial court).

When Marshall lodged a rule 403 objection to the State's question of Proctor, "Per [Marshall's] self-report, was he involved in any fighting behaviors as a juvenile?"

19

the trial court excused the jury and held a hearing. During the hearing Proctor testified,

> In terms of fights, . . . he got into the fights when he was younger, especially between the ages of 11 and 13. As a result of these fights, which occurred in school, he was in the sixth grade expelled and sent to alternative school. And then in the eighth grade he was suspended— essentially expelled for the rest of the year and sent to alternative school, but originally returned to that school.

The trial court then found that the probative value outweighed the "prejudicial impact," and Proctor testified to the same once the jury returned.

On appeal, Marshall argues that this evidence had no correlation to his sexual offenses and served "no purpose other than to prejudice" the jury against him. Marshall's argument again falls flat.

As discussed above, it is useful for the jury to consider the expert's explanation of the facts he considered in order to weigh the expert's opinion on the ultimate issue. *Stuteville*, 463 S.W.3d at 555. Proctor testified that Marshall's behavioral issues as a juvenile, which include his history of fighting, were integral to Proctor's diagnosis of Marshall as antisocial and as part of the overall assessment of Marshall's risk to reoffend.

Even if we were to hold that allowing the testimony was an abuse of discretion, there was no harm. We will not reverse a trial court's judgment because of an erroneous evidentiary ruling unless the ruling probably, though not necessarily, caused the rendition of an improper judgment. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118,

20

136 (Tex. 2012); *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008). Viewing Marshall's history of fighting as a juvenile in the context of the entire record—which included evidence of his ongoing gang involvement and fighting in prison, including with a prison guard—its admission was harmless. We therefore overrule Marshall's fourth issue.

## Conclusion

Having overruled all of Marshall's issues on appeal, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: September 13, 2018

21