In re COMMITMENT
OF James EEDS.

No. 09–07–439 CV.

Court of Appeals of Texas,
Beaumont.

Submitted April 2, 2008.
Delivered May 8, 2008.

Curtis E. Barton Jr., State Counsel for Offenders, Huntsville, for appellant.

Kerrie Hergenrader, Special Prosecution Unit, Civil Division, Huntsville, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

A jury determined that James Eeds suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Eeds appeals the judgment and order of civil commitment as a sexually violent predator. In three issues, Eeds contends the trial court (1) erred in denying the motion for directed verdict; (2) abused its discretion in allowing an expert witness to express an opinion on Eeds's truthfulness; and (3) abused its discretion in allowing improper jury argument by State's counsel. We affirm the judgment of the trial court.

■ In his first issue, Eeds contends the State failed to prove that he had two predicate offenses. At trial the State produced two judgments of conviction for indecency with a child by contact.[1] *See* Tex. Pen.Code Ann. § 21.11(a)(1) (Vernon 2003). The State also offered deposition testimony in which Eeds admitted that he fondled the breasts of an eight-year-old girl in the toy department of a Wal–Mart on December 6, 1996. The date of that offense matches the date of the offense listed in the judgment in Cause No. 44,156. The State alleged Cause No. 44,156 as one of the predicate offenses. Eeds also testified that on December 8, 1996, he approached a

---

1. The State also introduced judgments for an additional conviction for indecency with a child and a conviction for possession of child pornography. The State did not allege these convictions as predicate offenses in its petition. Eeds limits his arguments to one of the predicate offenses alleged in the State's petition and does not challenge the sufficiency of the evidence regarding the other predicate offense alleged by the State.

ten-year-old girl in the backpack sales area of a Kmart and offered her money to feel her breasts. The date of this offense matches the date of the offense for the judgment of conviction for indecency with a child by contact in Cause No. 44,157, a conviction not alleged by the State as a predicate offense.

Eeds moved for an instructed verdict when the State rested. According to Eeds, the State failed to prove he had been convicted of more than one sexually violent offense. Eeds based his motion upon documents that were never introduced into evidence before the jury. Instead, Eeds offered a docket sheet and an indictment from the file of Cause No. 44,-156 solely as an offer of proof to the trial court in support of the motion for directed verdict. The allegations in the indictment appear to match the facts described by Eeds for the offense committed at the Kmart on December 8, 1997. Eeds argued to the trial court that the allegations in that indictment describe a solicitation, not a completed act of indecency by contact. Eeds conceded the predicate offenses listed in § 841.002 include "solicitation, as defined by Chapter 15, Penal Code" but argued that listing refers only to the offenses described by § 15.03 and not criminal solicitation of a minor under § 15.031.[2] See TEX. HEALTH & SAFETY CODE ANN. § 841.002(8)(E) (Vernon Supp.2007); TEX. PEN.CODE ANN. § 15.03 (Vernon 2003); TEX. PEN.CODE ANN. § 15.031 (Vernon

Supp.2007). In response, the State argued that the judgment proves Eeds was convicted in Cause No. 44,156 of a conviction for indecency with a child by contact regardless of what other papers in the file might indicate. The trial court denied the motion for directed verdict.[3]

■ Eeds suggests that documents he submitted to the trial court outside the presence of the jury show that he was actually convicted of "indecency with a child by sexual contact by solicitation[,]" a crime he claims is not a predicate offense. We disagree on both counts. Section 841.002 includes Chapter 15 solicitation offenses in the definition of sexually violent offenses. Both criminal solicitation and criminal solicitation of a minor are included in Chapter 15. See TEX. PEN.CODE ANN. §§ 15.03, 15.031. More to the point, the two predicate offenses alleged by the State were for indecency with a child by contact, which is an offense also listed as a sexually violent offense under § 841.002. See TEX. HEALTH & SAFETY CODE ANN. § 841.002(8)(A). The judgment in Cause No. 44,156 clearly states that Eeds was convicted of an offense under § 21.11(a)(1); there is no evidence the judgment has been set aside through either direct or collateral attack or corrected nunc pro tunc. If Eeds has been convicted of an offense not allowed by the indictment, his sole remedy is through writ of habeas corpus. See TEX.CODE CRIM. PROC. ANN. art.

**2.** Eeds's argument in the trial court could be construed as conceding that an offense under § 15.031 qualifies as a predicate offense but arguing that the indictment in Cause No. 44,-156 did not describe an offense under § 15.031(b). In his brief on appeal, Eeds argues "[c]riminal solicitation of a minor is not a qualifying offense under the sexually violent predator act." In this opinion, we address Eeds's arguments as they are presented in his brief to this Court and construe his somewhat ambiguous arguments to the trial

court consistently with his arguments on appeal.

**3.** Eeds presented his expert witness and did not renew his motion for directed verdict at the close of evidence. He did re-urge the motion after the parties concluded jury argument and included in his motion for new trial a ground that "Eeds plead guilty to solicitation to commit indecency with a child by contact. This is not a qualifying offense for civil commitment."

11.07 (Vernon Supp.2007). Habeas corpus is the sole method in state court for a postconviction collateral attack of a final felony conviction. *See Ex parte Adams*, 768 S.W.2d 281, 287 (Tex.Crim.App.1989). Eeds cannot collaterally attack the criminal conviction in the commitment proceeding in the district court of Montgomery County. We overrule issue one.

In his second issue, Eeds contends the trial court erred in allowing the State's expert witness to testify about Eeds's truthfulness. The psychiatrist related her evaluation of Eeds for a behavioral abnormality. Without objection from Eeds, counsel for the State asked the psychiatrist, "When [Eeds] told you about these offenses, did you feel that he was being honest about the nature of his sexual offending?" The psychiatrist gave a complete answer without objection from Eeds.[4] Counsel for the State then asked, without objection, "[T]hose observations that you've made, why do you feel he's being dishonest about why he says he was in those stores at those times?" Again, the doctor gave a complete answer to the question without objection from Eeds.[5] Counsel for the State then asked, "The other observation you made, Doctor, that you felt he was dishonest about, the length of his sexual urges, what do you base that opinion on?" At that point, Eeds objected to the witness's testifying "as to the truthfulness of Mr. Eeds' testimony." The trial court overruled the objection.[6] Later in her testimony, the psychiatrist expressed her opinion that seeing a little girl's naked chest would not be the type of event that would trigger pedophilia in a person who was not already a pedophile. Without objection, she stated, "I think that he's not being truthful with himself or anybody— the evaluators if he says that it just happened two weeks prior to the incident. I think it was the attraction and the urges and—was going on for quite some time before that."

▇▇▇ The State argues Eeds failed to preserve the issue for appellate review.

4. The doctor explained as follows:

I think he was being dishonest or—when he was talking about—or he was—attempted to minimize why he was in the—the Wal–Mart and then the Kmart, looking at dolls when he said in the Wal–Mart. I don't think he said that in other—other interviews.

He also seemed to say that it started only two—two weeks before that, which when he saw his niece, who he said was six, he said he saw her walk through the living room and he saw her chest. Again, he—he—I don't think he was being honest about that was the first time he had ever had any kind of pedophilic impulses.

Again, the Kmart, the next incident, he—I think he was minimizing and not being honest to—to me and probably himself about why two days later he was back in the department store or big store and in a section where there were kids around again. He said, again, that he was searching for a backpack.

5. The doctor responded as follows:

Well, for the most part, pedophiles don't like to admit they have a deviant attraction to—to children; and I think he was attempting to minimize to me and then to himself about why—that he had any kind of predatory or grooming behavior. Again, it's—it's very common for pedophiles to hang out in areas or be—end up or find themselves in areas where there are children. And I think he wasn't being truthful or acknowledging his predatory behavior in these incidences.

6. The doctor went on to answer the question, as follows:

Well, he had talked to me that—or he had told me that he had previously been in a large store, like Wal–Mart or Kmart, and talked to little girls before, but he didn't act on his impulses. So, again, I think the fact, in my opinion, he was—he was starting to be a predator and look for opportunities long before the two weeks that he—he claims he became a pedophile.

Error may not be predicated on a ruling which admits evidence unless a timely objection appears of record. Tex.R. Evid. 103(a). Nonetheless, "[u]ntil a question or answer clearly shows that the evidence is improper, counsel has not waived his right to object when impropriety and the question or answer affects the admissibility." *Lucas v. Titus County Hosp. Dist./Titus County Mem'l Hosp.*, 964 S.W.2d 144, 150 (Tex.App.-Texarkana), *pet. denied per curiam*, 988 S.W.2d 740 (Tex.1998). In this case, the first question of the series unequivocally asked the psychiatrist if she felt Eeds was being honest in his responses during her evaluation. The unobjected-to, follow-up question asked why, and it was not until the doctor was asked for the basis for her opinion that Eeds voiced an objection. The doctor's response related to actions by Eeds—he admitted to having talked to little girls in big stores before the incidents in which he committed a crime—not to the relative credibility of Eeds or to the truthfulness of his testimony. That answer did not reflect more negatively on Eeds's truthfulness than the unobjected-to testimony that immediately preceded it. Because Eeds did not object to the expert's expression of opinion regarding his truthfulness at the earliest opportunity, he failed to preserve the issue.

■ Moreover, the case on which Eeds relies is distinguishable from his situation. In *Ochs v. Martinez*, a psychologist testified that he had administered psychological tests to an alleged child abuse victim and expressed his opinion that a four-or-five-year-old child would not be able to lie effectively to a series of people and that in his opinion this particular child was assertive enough that she could not be brainwashed. *Ochs v. Martinez*, 789 S.W.2d 949, 956–57 (Tex.App.-San Antonio 1990, writ denied) (op. on rehearing). The court of appeals held that the expert invaded the province of the jury by basing his conclusion about whether the child had been abused upon his personal opinion regarding her credibility rather than on matters within his expertise. *Id.* at 957. Here, Eeds did not deny having molested the girls in the stores, and the psychiatrist's expressed opinion related how her observations of Eeds's responses during their interview affected her medical diagnosis of a behavioral abnormality. Thus, her response concerned a matter within her expertise rather than within the province of the jury. We overrule issue two.

· ■ The third issue contends the trial court abused its discretion "in allowing petitioner to ask the jurors to place themselves in a position where the appellant is preying on children as it more likely than not caused an improper verdict due to an appeal to the juror's emotion and prejudice." Without objection, the State argued as follows:

> But when you're trying to decide if he's likely to re-offend, let's imagine that the Judge stands up and says this trial is over right now. We all go home. And we do. You know that he's getting out in October regardless. There's nothing to prevent that. So sometime in December, around Christmas season, you find yourself in the local Wal–Mart. Maybe it's the afternoon, maybe it's the evening. And as you pass the toy aisle, you see a little eight-year-old girl down there by herself. Remember, those two stranger victims were blonde hair, light skin. Nothing like his [third victim, a family member]. So we'll call her a blonde-hair, light-skinned little girl, by herself.
>
> You continue down the aisle. You notice someone turns in the aisle behind you; and you turn, and you recognize James Eeds, this individual—not some hypothetical individual—James Eeds

heading down the aisle toward that girl. And you know that the store is not crowded. Are you worried? I mean, are you concerned; or is she safe?

Eeds did not object to this line of argument and only objected when counsel for the State moved on to another scenario that involved imagining having new neighbors. The trial court overruled Eeds's objection that the argument was outside the scope of closing. Counsel for the State then asked the jury to imagine Eeds's unsupervised babysitting of young girls. Counsel asked the jurors to imagine the following:

James Eeds is going to spend the night at their house, by himself. Today. Not ten years ago. Today. Are you concerned for those girls? Are they safe? Are they safe staying with him unsupervised in November, December of this year?

No way. And that's really what this question boils down to. That's all that question is. You know you would be concerned. Of course you would. Who wouldn't be?

■ Although Eeds contends his objection covered the entire argument, he did not object to the first scenario raised by the State in its argument to the jury. An objection is required to preserve error for appeal. *See* Tex.R.App. P. 33.1. To obtain a reversal based upon improper jury argument, an appellant must demonstrate "(1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge." *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979).

Eeds argues the argument was so egregious that no instruction could have cured the error and no objection was required. He did raise the error in his motion for new trial. *See* Tex.R. Civ. P. 324(b)(5). Jury argument must be confined "strictly to the evidence and to the arguments of opposing counsel." Tex.R. Civ. P. 269(e). The evidence in this case showed that Eeds had been incarcerated for soliciting and for feeling the breasts of little girls in large discount stores and for molesting and keeping photographs of a child he had been babysitting. The jury had to decide if Eeds had a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. Thus, it was entirely appropriate for the jury to consider whether the children Eeds will encounter in stores and homes after his release will be safe from a predatory act of sexual violence. Accordingly, it would not be improper for the State to invite the jury to consider the matter, and the trial court did not abuse its discretion in failing to grant a motion for new trial based upon a claim of incurable prejudicial jury argument. We overrule issue three and affirm the judgment.

AFFIRMED.