In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00650-CV
_____


IN RE COMMITMENT OF LLOYD ALEXANDER

_____

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 11-05-05227 CV
_____

**MEMORANDUM OPINION**

The State of Texas filed a petition seeking the civil commitment of Lloyd Alexander as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001.-151 (West 2010 & Supp. 2012) (SVP statute). A jury found that Alexander is a sexually violent predator; subsequently, the trial court signed a final judgment and an order of civil commitment. In his appeal, Alexander challenges rulings by the trial court regarding jury selection, cross-examination, and closing argument. Finding no reversible error, we affirm the trial court's judgment.

1

## Background

Before Alexander was released from prison, the State filed a petition for civil commitment alleging that Alexander was a repeat sexually violent offender based on his 1995 conviction for sexual assault of a child and his three previous convictions for indecency with children involving sexual contact. The evidence presented during Alexander's civil commitment trial included testimony by experts who diagnosed Alexander as a pedophile, as well as their testimony that Alexander suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

## Jury Selection

In issue one, Alexander complains that during voir dire, his attorney was not permitted to question potential jurors about whether they could be fair on any types of sex cases. In issue two, Alexander contends the trial court, during a pretrial conference, ordered Alexander's attorney to refrain from asking prospective jurors about pedophilia.

The Texas Supreme Court has specifically stated in a sexually violent civil commitment case that "[l]itigants have the right to question potential jurors to discover biases and to properly use peremptory challenges." *In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011). At the same time, trial courts are allowed

2

to exercise reasonable control over voir dire; therefore "refusals to allow lines of questioning during voir dire are reviewed under an abuse of discretion standard." *Id.* at 228-29. An abuse of discretion occurs if the "denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges." *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989). To preserve error when the trial court refuses to allow proper questions, the record must show the party made "a timely request to the trial court, stating the specific grounds for the ruling [the party] desired, and [that the party] obtained a ruling from the court." *Id.* at 708.

With respect to Alexander's claim that the trial court improperly restrained his attorney from questioning the panel about whether they might not be fair on any type of sex case, the record reflects that the trial court corrected Alexander's counsel when she referred to the proceeding when questioning the prospective jurors as "a sex case." The trial court expressed concern that referring to the civil commitment proceeding as a "sex case" would confuse the jury about whether the case being heard was a civil or a criminal proceeding. When Alexander's attorney explained to the prospective jurors that "[m]ost of the evidence and the testimony that you're going to be hearing in this case will relate to sexual matters[,]" the record shows that Alexander's attorney asked:

3

Is there anybody here who would feel uncomfortable sitting in a group with 11 other people talking about sex matters and using explicit sex terms, whether it's penis or vagina or whether it's oral sex or anal sex, whatever words need to be discussed to deliberate the case, is there someone here who can't make that discussion, who couldn't be part of that discussion or deliberation because you're uncomfortable using explicit sexual language and anatomical terms? Raise your hand if you would be uncomfortable and could not deliberate so that I will know.

After questioning a juror who responded to that question, Alexander's attorney asked:

Okay. Let me ask you this: Is there any kind of a -- is there any kind of a sex case, if you were sitting to deliberate on a sex case that you could not deliberate on without having such a strong bias that you would be an unfair juror? Let's identify, is there anything or could you all sit on any kind of sex case if you were called as a juror on a sex case?

At that point, the trial court stated:

Now, [counsel], I want you to talk about these cases, not about all different types of sex cases that are out there, because this is not a criminal matter. This is a civil matter. I don't want you to start to get into other things that aren't really relevant to this case. Okay? Let's talk about behavioral abnormality and their qualifications in this type of jury trial. Okay?

According to Alexander, his question was proper because the question was designed to discover which of the potential jurors had a deep-seated animus toward pedophiles. He claims that by not being allowed to question about sex cases generally, the trial court prevented him from intelligently using his peremptory challenges. *See Hill*, 334 S.W.3d at 228; *In re Commitment of Miller*, No. 09-11-

4

00450-CV, 2012 WL 3031160, at *1-2 (Tex. App.—Beaumont July 26, 2012, pet. denied) (mem. op.) ("'Can you set aside any bias if you find there's an offense against a child? Can you listen to all the evidence and follow the law?'" and "'Is anyone unable to hear topics about children? Can you listen to the evidence and follow the law?'"); *In re Commitment of Kalati*, 370 S.W.3d 435, 440 (Tex. App.—Beaumont 2012, pet. denied) ("Would anybody on the first row find it hard to give someone who has been diagnosed by an expert as a pedophile a fair trial?").

With respect to the issue of questioning the panel generally on sex cases, the record shows that the court merely asked counsel not to use an informal, general, and potentially misleading term—"sex case"—when referring to a civil commitment proceeding. The trial court's request did not restrict Alexander's ability to question the potential jurors about their animus toward pedophiles or from determining whether the potential jurors could set aside such prejudice, follow the jury instructions, and give Alexander a fair trial. Moreover, Alexander's attorney never asked the trial court to allow her to question the potential jurors about pedophilia.

Trial courts are allowed to exercise discretion to prevent a party from asking questions that are not proper questions. *See Hill*, 334 S.W.3d at 228-29. The trial court perceived the question at issue as one that had a tendency to create confusion

among the panelists. We hold the trial court exercised reasonable control over the line of questioning at issue, and that it did not abuse its discretion because it did not prevent Alexander from questioning the panel on pedophilia. *Id*. We overrule issue one.

In issue two, Alexander complains that the trial court made a pretrial ruling that prevented his attorney from asking proper questions about pedophilia. Before jury selection began, counsel for the State expressed a concern that Alexander's counsel would discuss Alexander's pedophilia during jury selection. Alexander's counsel informed the trial court, "Your Honor, I have no intention to use the word 'pedophile.'" In the pretrial conference, the trial court asked that counsel not talk about the evidence in the case, but warned that "you'll just have to make your objections and she'll have to do her voir dire as she sees proper and I'll have to make my rulings . . . ." The trial court added, "But it's my feeling that a jury, we don't allow them to preview the evidence prior to trial and that if we talk about pedophilia that that essentially almost invites a riot on the part of the jury." The trial court explained that "pedophilia is against the law and, as I said, it can be a basis for somebody having a behavioral abnormality." After more discussion, the trial court asked Alexander's counsel what questions she planned to ask. Counsel informed the trial court, "I'm not going to say anything about pedophilia, Your

Honor." Counsel added that she intended to voir dire the members of the venire about whether any of them had been victimized. The trial court told counsel such questions would be permitted. Counsel informed the trial court that was all she intended to ask on the subject.

"If the voir dire includes a preview of the evidence, . . . a trial court does not abuse its discretion in refusing to allow questions that seek to determine the weight to be given (or not to be given) a particular fact or set of relevant facts." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 753 (Tex. 2006); *see also In re Commitment of Barbee*, 192 S.W.3d 835, 846 (Tex. App.—Beaumont 2006, no pet.). However, "a trial court should not foreclose *all* inquiry about a relevant topic." *Hyundai*, 189 S.W.3d at 758. For example, in *Hill* the trial court erred because it suspended an entire line of questioning and did not allow counsel to ask the panel specific questions about Hill's sexual history after several members of the venire expressed bias against homosexuality. 334 S.W.3d at 229. The trial court erred in *Miller* because it disallowed questions about sexual offenses against children after several members of the venire expressed bias. *See* 2012 WL 3031160, at *3.

In Alexander's case, it appears the trial court was concerned that questioning the panelists about pedophilia might be attempted during voir dire as part of a

7

strategy aimed at determining how various panelists might weigh information related to Alexander's sexual offenses against children when it was later introduced at trial. However, the attorneys in SVP cases may properly pose questions during voir dire when their questions are designed to reveal the attitudes of the potential jurors on matters that are relevant to the sexual history of the person the State is seeking to commit. *See id.*; *see also Hyundai*, 189 S.W.3d at 758. But, in Alexander's case, Alexander's attorney never informed the court that she wanted to ask a line of questions on the subject of pedophilia and she never posed a question to the prospective jurors specifically asking about their attitudes about pedophiles during voir dire. Instead, she told the trial court that she did not intend to bring up the subject. And, the record reflects that the trial court, during the pretrial hearing, told Alexander's attorney that she would have to conduct voir dire as she thought proper. Finally, near the end of the pretrial hearing, the trial court asked Alexander's attorney to identify the specific questions she wanted to ask in voir dire. Although Alexander's attorney identified several specific things she intended to ask during voir dire (which the trial court indicated would be allowed), she never asked if she could ask the potential jurors about pedophilia.

We conclude that the record does not support Alexander's argument that his attorney was ordered or prevented by the trial court from questioning the panel on

8

their attitudes about pedophiles. We further conclude that Alexander did not pursue the matter to an adverse ruling. *See Hill*, 334 S.W.3d at 229; Tex. R. App. P. 33.1(a)(2)(A).

Having carefully reviewed the record, we conclude the trial court did not prevent Alexander's counsel from asking questions in voir dire about pedophilia. *See In re Commitment of Crosby*, No. 09-11-00371-CV, 2012 WL 983168, at *3 (Tex. App.—Beaumont Mar. 22, 2012, pet. denied) (mem. op.). We overrule issue two.

Evidence

Alexander raises two issues complaining about the trial court's rulings to exclude and admit certain evidence. In issue three, Alexander contends the trial court impermissibly restricted his right to cross-examine the State's testifying psychologist, Dr. Timothy Proctor about his rate of error. The trial court sustained the State's objections to the following questions on the basis the questions were not relevant or were misleading:

- Not one single person you've diagnosed with [a] behavioral abnormality has ever gone on to commit another sexual offense?

- Do you know whether or not your predictions are correct?

- Do you know what your rate of error is?

9

The jury's determination that Alexander is a sexually violent predator relies upon the opinion testimony of the State's experts; therefore, questions about the general accuracy of Dr. Proctor's opinions concerning the subject matter of his trial testimony are relevant inquiries. *See* Tex. R. Evid. 401 (relevant evidence tends to make the existence of a fact of consequence more or less probable than it would be without the evidence). A witness may be cross-examined on any matter relevant to any issue in the case. *See* Tex. R. Evid. 611(b). However, the trial court may exercise reasonable control over the interrogation of witnesses to make the interrogation effective for the ascertainment of the truth. *See* Tex. R. Evid. 611(a). Also, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Tex. R. Evid. 403.

Alexander argues that the questions at issue would have informed the jury about the reliability of Dr. Proctor's opinion. We disagree that the questions at issue would have assisted the jury in determining the weight to give to Dr. Proctor's testimony. First, the questions at issue implicitly presume that Dr. Proctor expressed an opinion by expressing a prediction about Alexander's future behavior; instead, the record reflects that Dr. Proctor testified that he did not provide a prediction that Alexander would commit another offense. Before asking

10

the questions at issue, Alexander's attorney asked Dr. Proctor, "And your role in this proceeding is to predict whether Lloyd will commit a future act of sexual violence, isn't that true?" Dr. Proctor replied, "No." Dr. Proctor explained that some patients, although properly placed in a moderate to high risk category, do not go on to re-offend; thus, Dr. Proctor assessed a present risk that was based on Alexander's history, his actuarial tests, and his interview.

Leading potentially to further confusion, risk assessments in cases involving sexually violent predators are made among patient populations that typically have received little or no sex offender treatment. However, if committed, persons in the assessment group in the State of Texas subsequently receive treatment designed to reduce the risk of recidivism. Dr. Proctor's experience appears to be with patients involved in the State of Texas. Consequently, questions that fail to account for the effects of sex offender treatment based on the physician's patient population or the population he relied on when assessing the patient cannot assist the jury in determining whether the expert has in the past correctly applied the techniques developed to determine which persons need sex offender treatment to prevent re-offending. *See In re Commitment of Young*, No. 09-11-00663-CV, 2013 WL 4758218, at **27-28 (Tex. App.—Beaumont Sept. 5, 2013, no pet. h.) (reasoning

that extrapolating an untreated person's recidivism risk from recidivism statistics of a treated population presents a logical fallacy).

Additionally, the record reflects that Dr. Proctor was thoroughly cross-examined when he testified during Alexander's trial. Alexander's attorney questioned Dr. Proctor about the role actuarials played in his opinion, and how he had scored Alexander's actuarial tests. Through these questions, Alexander's attorney showed the jury that Alexander received a score of 4 on the Static-99R, placing Alexander in a group that Dr. Proctor considered as representing a moderately high likelihood to reoffend, that another group of sex offenders had a higher rate of reoffending, and that in the Static-99R study 20.1 percent of the people with Alexander's score were known to have committed another offense in a period of five years. Dr. Proctor admitted that actuarial instruments are not exact, that in 2001 and 2002 other professionals had given Alexander higher scores using similar actuarial instruments, that the Static-99R takes age into account and assigns less risk to persons who have reached the age of 60, and that Alexander will be approaching 60 and might be older than 60 when he is released from prison. The trial court permitted Alexander to question Dr. Proctor about the limitations of the Static-99R, including the assessment tool's failure to account for dynamic factors and that it is "considered moderately predictive."

12

The trial court could reasonably conclude that the jury would have been confused had Alexander's attorney been allowed to ask the questions at issue. We conclude the trial court did not abuse its discretion by sustaining the State's objections to the questions at issue, and we overrule issue three.[1] *See* Tex. R. Evid. 403.

In issue four, Alexander contends the trial court improperly required him to respond to a question about whether a cellmate had accused him of sexually inappropriate behavior when they lived in the same cell. According to Alexander, the question was improper because it required him to speculate about the truth or veracity of another person.

The record contains evidence regarding the accusation by Alexander's cellmate. Dr. Proctor testified that although Alexander had no formal disciplinary cases, he had been accused of being "sexually inappropriate" with other inmates. According to Dr. Proctor, after Alexander was released on mandatory supervision, Alexander's former cellmate accused Alexander of sexual assault. Dr. Proctor

---

[1]Alexander suggests we should restrict our analysis to the State's relevance objection. A trial-level complaint is a prerequisite to presenting a *complaint* for appellate review. *See* Tex. R. App. P. 33.1(a). As the prevailing party on an evidentiary ruling made during a trial on the merits, the State is not limited to arguing the grounds asserted during the trial. *See State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989) ("[A]n appellate court should uphold the ruling if there is any other ground for doing so, even though not urged below.").

stated that he considered the accusation in forming his opinion and felt the allegation should not be characterized as unproven; however, Dr. Proctor also agreed the accusation did not result in a court sanction.

Alexander testified during the trial; during his testimony, Alexander denied having engaged in any sexual activity with his cellmate. According to Alexander, they "got along well enough" during the eight months they were housed together, and Alexander explained that while they had been housed together, his cellmate never alleged that he had engaged in improper behavior. Alexander also testified that detectives first interviewed him about the accusations of his cellmate after he was released, and he was neither arrested nor charged. On re-examination, Alexander clarified that shortly before his release from prison his cellmate "just had nothing to say to me." The State asked, "And he made up these allegations about you after you were already released into the community?" Alexander objected that the question required that he "talk about whether someone else is lying." Alexander's former cellmate did not testify.

We need not address whether the trial court abused its discretion by allowing the testimony at issue. A witness cannot invite the error then complain on appeal. *Raney v. State*, 958 S.W.2d 867, 879 (Tex. App.—Waco 1997), *pet. dismissed*, 982 S.W.2d 429 (Tex. Crim. App. 1998). After Dr. Proctor stated he considered the

former cell mate's accusation, Alexander offered his own testimony that the sexual conduct alleged by his cellmate had not occurred and stated that his cellmate had made charges of misconduct against others. By these questions, Alexander implied that he was never charged with sexual assault because the cellmate's accusations were false. The trial court did not abuse its discretion by allowing the State to cross-examine Alexander on the topic. *Id.* We overrule issue four.

## Closing Argument

Alexander's remaining three issues complain about several of the trial court's rulings during closing argument. We may reverse a judgment based upon improper jury argument when an error that was not invited or provoked was preserved by the proper trial predicate and was not curable "by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge." *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979); *In re Commitment of Eeds*, 254 S.W.3d 555, 560 (Tex. App.—Beaumont 2008, no pet.).

In issue five, Alexander complains the trial court should have granted his request for a mistrial after counsel for the State injected her personal opinion during jury argument that Alexander was not "very good at lying." The trial court sustained Alexander's objection that the argument was improper and granted his

motion to strike the statement; however, the trial court denied Alexander's request for a mistrial.

Harmful error is rare when trial courts make an effort to cure improper jury argument. "Typically, retraction of the argument or instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot be cured." *Living Centers of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008). An unsupported, extreme, and personal attack on the opposing party "can similarly compromise the basic premise that a trial provides impartial, equal justice." *Id.* at 681.

There was evidence in the record to support an argument that Alexander should be considered a liar. Dr. Proctor testified that Alexander has exhibited traits of pathological lying. The State's other expert, Dr. Gaines, characterized Alexander as "charming," "articulate," "conning," and "manipulative."

The State's argument suggesting that Alexander was a liar finds support in the record; therefore, we must assess the harm arising from the injection of counsel's personal opinion that Alexander is a poor liar. Alexander argues the comment was incurable because his testimony provides the only support for his defensive issues. However, the State's attorney did not further inject her personal opinion into closing argument, as her remaining argument focused on the experts'

assessment of Alexander's risk factors, Alexander's diagnosis of pedophilia, and Alexander's extensive history of grooming and molesting minors. We conclude that any alleged error regarding the prosecutor's expression of her opinion regarding Alexander could have been cured had Alexander's attorney requested an instruction that would have informed the jury to disregard the argument.

The trial court granted Alexander's request to strike the improper argument from the record. Alexander could have asked for an instruction that the jury disregard the objectionable argument, but his attorney did not do so. We conclude that the trial court was not required to grant mistrial based on the argument at issue. *See Standard Fire*, 584 S.W.2d at 839. We hold the trial court did not abuse its discretion by denying Alexander's request for a mistrial, and we overrule issue five.

In issue six, Alexander complains the trial court refused to allow his attorney "to define non-legal terms according to common usage[.]" While discussing the charge with the jury, defense counsel sought to discuss terms that were undefined in the charge, as follows:

> Behavioral abnormality means a congenital or acquired condition, that by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense to the extent that the person becomes a menace to the health and safety of another person.

17

That's a long definition, let's just break it down a little bit. What is congenital or acquired condition? We don't have a specific legal definition given to you in your packet so you use your ordinary meaning that you're familiar with. Congenital means at birth. And acquired condition, that's not defined in the packet either. But an acquired condition in its ordinary meaning --

The trial court sustained the State's objection that Alexander's attorney was attempting to give the jury definitions that were not included in the charge. Counsel continued without further objection, as follows:

When you go back, you're not going to see a definition here on what is an acquired condition. You use your common sense. The legislature counts on you to do so because they didn't provide you with a specific legal definition. So you can do that.

Okay. Now, this particular acquired condition must, according to our statute, affect a person's emotional or volitional capacity. Okay. So we're talking about how a person thinks and feels, what a person does, emotional or volitional capacity. But you're still not done because that's not all your question talks about with your definitions.

This condition has also required to predispose him to commit a sexually violent offense. And there's still more. And he has to be a predisposition to the extent that the person becomes a menace to the health and safety of another person. That's the whole thing, all of it. But, you know, there's more even than that. There are more legal definitions and issues to consider here.

The term "acquired condition" was in the charge, and the State's attorney had argued to the jury that Alexander was a pedophile whose condition had not changed over the course of his life. Alexander's attorney confined her argument to the evidence and the arguments of opposing counsel. *See* Tex. R. Civ. P. 269(e).

18

Alexander's attorney is also correct that the term "acquired condition" is not given a specific legal meaning based on the definitions of terms found in the charge. Therefore, an argument attempting to use an ordinary meaning for the term was neither incorrect nor outside the record; therefore, the trial court erred when it sustained the State's objection.

Nevertheless, Alexander must also show that he was harmed by the trial court's erroneous ruling, and an error committed by a trial court is harmful only if the error "probably caused the rendition of an improper judgment." *See* Tex. R. App. P. 44.1(a)(1). Counsel discussed the charge with the jury, and the jury was capable of applying an ordinarily understood meaning to the term "acquired condition." Additionally, the record does not reflect how Alexander's attorney would have defined the term "acquired condition" had she been allowed to proceed, so we are unable to determine whether the term would have been given an appropriate meaning had the argument been allowed. Having carefully reviewed the entire record, we are not persuaded that the trial court's error is shown to have caused the jury to reach an improper verdict based on the evidence. *Id.* We overrule issue six.

In issue seven, Alexander complains the trial court improperly allowed the State to criticize Alexander's counsel during rebuttal. The State's attorney commenced her rebuttal, as follows:

> You know, we started out yesterday or Monday, I started out today to remind you that this is a straightforward case. And it's such a straightforward case that all the defense can do when they get up here is put a guilt trip on you. All the defense can do when they get up here is make perhaps the comments about –

Alexander's attorney objected, characterizing the argument as constituting personal criticism of counsel. *See* Tex. R. Civ. P. 269(e). The trial court overruled the objection.

The comments at issue were not made in response to the evidence admitted during Alexander's trial, nor were they responsive to the arguments advanced by Alexander's counsel in closing argument. The argument presents opposing counsel's performance of her duties in an unfairly negative light and appears designed to "turn the jurors against defense counsel for doing what lawyers are ethically bound to do: advocate clients' interests within the bounds of law." *Living Centers*, 256 S.W.3d at 682. We conclude the argument was improper and that the trial court should have sustained Alexander's objection to it. *Id.* at 681-82.

However, improper argument of counsel is rarely reversible. *Id.* at 681 (comparing counsel to perpetrators of Nazi atrocities required reversal of a

20

judgment against a nursing home). We are not persuaded that the comments at issue caused the jury to disregard their instructions to "not let bias, prejudice, or sympathy play any part in your decision[,]" nor are we persuaded that the comments undermined Alexander's effort to explain to the jury that he did not have the burden of proof. *See* Tex. R. App. P. 44.1(a)(1). Because we are not persuaded that the argument at issue caused the jury to reach an improper verdict, we overrule issue seven.

Having overruled each of Alexander's issues, we affirm the judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 7, 2013
Opinion Delivered September 26, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.