**AFFIRMED; Opinion Filed March 11, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-01163-CV

## IN RE COMMITMENT OF TIMOTHY HILL

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV-17-70005-V**

## OPINION

Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Nowell

A jury found Timothy Hill is a sexually violent predator, and the trial court entered judgment civilly committing him pursuant to Texas Health and Safety Code Chapter 841. In three issues, Hill argues the evidence is legally and factually insufficient; the trial court abused its discretion by overruling an objection made during the prosecutor's closing argument; and the trial court abused its discretion by refusing Hill's requested jury charge. We affirm the trial court's judgment.

## A. Sufficiency of the Evidence

In his first issue, Hill argues the evidence is legally and factually insufficient to prove beyond a reasonable doubt that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

### 1. *Legal Standard*

In a suit to commit a person as a sexually violent predator, the State must prove beyond a reasonable doubt that the person (i) is a "repeat sexually violent offender" and (ii) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE §§ 841.003(a), 841.062(a). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id*. § 841.003(b); *see also id*. § 841.002(8) (defining "sexually violent offense"). The uncontested evidence shows Hill has been convicted of five sexually violent offenses and sentence was imposed for each offense. Therefore, he is a repeat sexually violent offender.

A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2). A "predatory act" is an "act directed toward individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5). Hill challenges the State's evidence

–2–

showing he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence; he argues the State's expert witness's opinions amount to no evidence, and no rational finder of fact could have found the required elements beyond a reasonable doubt without that testimony.

In these cases we use the criminal test for legal sufficiency. *In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *2 (Tex. App.—Dallas Jan. 30, 2019, no pet.) (mem. op.). Thus, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the required elements beyond a reasonable doubt. *Id.* It is the factfinder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences for basic to ultimate facts. *Id.*

The Texas Supreme Court recently clarified the standard of review for factual sufficiency in civil cases where, as here, the burden of proof is beyond a reasonable doubt. The court stated:

> We hold that a properly conducted factual-sufficiency review in an SVP[1] case requires the court of appeals to determine whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is an SVP. In so doing, the appellate court may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony, and the court must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. If the remaining evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its

---

[1] Sexually violent predator.

–3–

finding was true, the evidence is factually insufficient to support the verdict.

*In re Commitment of Stoddard*, No. 19-0561, 2020 WL 7413723, at *1 (Tex. Dec. 18, 2020) (footnote added).

### 2. *Factual Background*

At the time of trial, Hill was 49 years old, on parole, employed, and living with family members. Hill began sexually offending at age 17. On March 19, 1987, he pleaded guilty to and was convicted of three counts of aggravated sexual assault of a child under age 14 and sentence was imposed for each offense. The offenses were against three different boys, and Hill made voluntary written statements in which he described the events surrounding his attacks in two of the cases. Those statements were admitted and the facts of those cases were presented to the jury at trial in this matter. However, at trial, Hill testified he did not sexually assault the boys.

Hill was released on parole in February 1995. He got married, obtained employment, completed sex offender treatment, and abided by the conditions of his parole. During the summer of 1997, while on parole, Hill sexually assaulted two women. On January 9, 1998, he pleaded guilty to and was convicted of two counts of aggravated sexual assault and sentence was imposed for each offense. The facts of those cases were presented to the jury. Hill also testified he did not commit these offenses.

While in prison the second time, Hill had approximately nineteen minor disciplinary events and six major disciplinary events, including one for sexual misconduct. The jury heard the facts related to Hill receiving the sexual misconduct disciplinary action, and Hill again denied committing the offense. Although he completed sex offender treatment while he was incarcerated, he testified he did so only because it was a requirement for parole. He initially denied his sex offenses to his therapist, but later admitted the offenses because he was required to as part of the program. He testified: "I told 'em what we was supposed to tell 'em to work the program."

While on parole before trial in this matter, Hill attended weekly group therapy sessions for sex offender treatment. He agreed sex offender treatment is important for people who have committed sex offenses, but stated he does not need sex offender treatment because he is not a sex offender. He testified he does not have any triggers for sexually reoffending. In the future, Hill would like to work as a counselor; he wants to help people using the knowledge he acquired in his treatment classes.

During the approximately six months Hill was on parole before trial, there was no evidence he had reoffended. Hill's parole officer testified Hill has done well on parole, meaning he has "no scheduled deviations, mak[es] his curfew on time," goes to and participates in sex offender treatment, maintains employment, and has

not committed crimes. He also completed a gang disassociation course. While he has been on parole, Hill has been supervised on GPS monitoring equipment, which includes an ankle bracelet.

The State's expert witness, Dr. Randall Price, has a Ph.D. in psychology and has practiced forensic psychology for more than 36 years. He is a licensed sex offender treatment provider and is board certified in forensic psychology and clinical neuropsychology. The State retained Dr. Price to evaluate Hill.

Price described his methodology for conducting forensic evaluations. He reviews a person's records, conducts face-to-face evaluations, and uses actuarial instruments. Based on the information he collects and available research, Price forms his opinions.

Price reviewed over 2,000 pages of Hill's records, including offense reports, plea documents, prison records, medical records, and Hill's depositions in this case. He noted Hill denies committing the offenses and has told different stories about the offenses over time.

Price met Hill twice before Hill was released on parole. Hill initially had reservations about participating in the evaluation and would not give his informed consent to be evaluated. When Price returned to the prison a second time, Hill consented to the evaluation. Price evaluated Hill in accordance with his training as a psychologist and within the accepted standards of forensic psychology to determine whether Hill has a behavioral abnormality.

Price used two actuarial instruments when evaluating Hill: the Hare Psychopathy Checklist Revised (PCL-R), which is used to evaluate a person for psychopathic traits, and the Static-99, which is used to evaluate the person's risk factors for reoffending. Hill scored an 18 out of 40 on the PCL-R. A score of 30 or more, which Hill did not meet, is associated with a prototypical psychopath. There is a positive correlation between psychopathy and risk to reoffend, especially for violent offenses.

Hill had a raw score of 6 on the Static-99.[2] Price testified the score standing alone does not have meaning. Rather, Price compared Hill's score to the histories of other offenders who scored a 6 on the Static-99 to see how often those people reoffended. According to one study, 20.5 percent of individuals with a score of 6 are convicted of reoffending. A study examining only Texas offenders showed those with a score of 6 have a 6.5 percent chance of committing a sexually violent offense within five years. The same study showed that those who also have a behavioral abnormality are substantially more likely to reoffend. Price testified a score of 6 is "well above an average level of risk"; it shows a "high level risk" of reoffending.

The Static-99 has been shown to be fairly accurate when used to categorize sex offenders for their relative risk of recidivism. One of the highest risk factors is prior sexual offenses. Others include the types of victims, number of offenses, and

---

[2] Price testified Hill's records showed a prior Static-99 assessment was performed by a different practitioner, and Hill scored a 4. Price did not know the methodology used by the other practitioner.

whether the person lived with a romantic companion for two or more years. Age is the only factor on the test that can lower a person's score over time because recidivism decreases with age.

Hill's risk factors include the age range of his victims (he offended against both children and adults), the type of victims (he offended against males and females), committing offenses while on parole, denying committing the offenses, and continuing to sexually offend while incarcerated. Price testified that by committing offenses while on parole and while incarcerated, Hill showed the sanction of incarceration does "not inhibit their behavior, that their sexual deviance was stronger than the sanction." Hill's denial of committing all prior offenses is a risk factor because "it keeps sex offender treatment from working. . . . We know that the successful completion of sex offender treatment is a protective factor, so it prevents that." Price conceded that prison is not a safe place for sex offenders and denial could be a survival tactic in prison. However, after being released from prison, Hill continued denying the offenses to which he pleaded guilty.

Hill's strongest protective factor is his age, almost 50 years old. Age is a protective factor because a considerable amount of research shows the majority of sexual offenses and violent offenses are committed by younger people and commission of those offenses tends to decline with age. Other protective factors include no major mental illnesses, Hill's relatively good employment history, his familial support system, and his plan for living in the community. Although Hill

completed sex offender treatment before being released from prison, which generally is a protective factor, Hill maintains he did what he needed to do and said what he needed to say to finish the program while denying he committed the offenses or needed treatment. While in sex offender treatment during his parole, Hill waited for several months to tell his treatment provider about his three offenses against minor children. Price testified this was another form of denial. And while Hill wrote a narrative of the crimes against the women as part of his treatment, Hill told Price he only did so because he thought he should.

Price testified there are two pathways to meet the criteria for behavioral abnormality: (1) sexual deviance and (2) anti-social conduct. Price believed Hill met the criteria because he engaged in sexually deviant behavior and has an anti-social history. Acting on sexual deviance and exhibiting anti-social behavior increases a person's risk for reoffending.

Price testified Hill has traits of paraphilia, traits and features of non-consensual paraphilia, and traits and features of pedophiliac disorder. Those traits and features are found within the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). As to the non-consensual aspect, Price testified: "For somebody to be able to engage in the sexual behavior as a male and be aroused and perform, it means that they're aroused in spite of the fact that the person isn't giving their consent."

Price also concluded Hill has traits of narcissistic personality disorder. Hill engages in positive impression management, meaning he embellishes his background in a positive way. He has a sense of entitlement, believes he has been treated unfairly, believes he deserved better legal representation, and considers himself a victim.

Price further concluded Hill has traits of anti-social personality disorder. Hill has been a gang member and admitted to engaging in criminal activities with the gang, including a drive-by shooting and selling drugs on the gang's behalf. Hill fails to conform to social norms, lacks regard for the rights and safety of others, repeatedly engages in illegal behavior, lacks remorse, denies previous offenses, is deceitful and impulsive, and cannot inhibit his behavior. The five sex offenses are examples of anti-social behavior.

Based on his assessment of Hill, Price concluded Hill has a behavioral abnormality because he acts on sexually deviant thoughts and displays anti-social behavior. Price believed Hill has a congenital or acquired condition that has affected his emotional and volitional capacity, which has predisposed him to commit predatory acts of sexual violence. Additionally, there is evidence that he is a menace to the health and safety of others and evidence he is likely to commit predatory acts of sexually violent offenses. Using the definition of behavioral abnormality in the health and safety code, Price opined that Hill has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

*3. Analysis*

Hill pleaded guilty to and was convicted of five sexually violent offenses, and a sentence was imposed for each of those offenses. It is uncontested he is a repeat sexually violent offender. On appeal, Hill argues the evidence is legally and factually insufficient to show he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence for two reasons: (1) Price misinformed the jury that "likely" has been defined by case law to mean "more than a mere possibility" and that definition was the legal standard the jury must follow,[3] and (2) Price incorrectly scored Hill as a 6 rather than a 4 on the Static-99.

We addressed Hill's first argument in *In re Commitment of Mendoza*. No. 05-18-01202-CV, 2019 WL 5205710, at *7 (Tex. App.—Dallas Oct. 16, 2019, pet. denied) (mem. op.). In that case, the appellant raised the same complaint that Hill raises in this appeal; Mendoza argued Price "misrepresented the status of the law regarding the term 'likely,' misinforming the jury that 'more than a mere possibility' had been adopted by the courts and was the law that the jury must follow, as opposed to merely his opinion of what the term meant." Based on our precedent, we

---

[3] We note that Price has testified multiple times that the term "likely" has been defined by case law to mean "more than a mere possibility." *See In re Commitment of Mendoza*, No. 05-18-01202-CV, 2019 WL 5205710, at *7 (Tex. App.—Dallas Oct. 16, 2019, pet. denied) (mem. op.); *In re Commitment of Rollings*, No. 05-17-00938-CV, 2018 WL 6695731, at *5 (Tex. App.—Dallas December 20, 2018, no pet.) (mem. op.). Price's testimony on this point is incorrect. Neither case law nor the statute defines "likely" in this context. This Court has stated the term "likely" in the Act "does not require evidence of a specific percentage of risk, and the term should not be interpreted to mean 'more likely than not.' Rather, the expert's personal definition of 'likely' goes to the weight the jury decides to give the expert's testimony." *In re Commitment of Johnson*, 2019 WL 364475, at *3 (internal citation omitted).

concluded "Price's explanation of how he 'conceptualizes' the term 'likely' did not render the evidence in this case legally or factually insufficient." *See id.* (citing *In re Commitment of Rollings*, 2018 WL 6695731, at \*5).

Hill's second argument is that Price incorrectly scored the Static-99. Price testified that a different practitioner determined Hill's score to be a 4; Price explained "I don't know how [the other practitioner] scored each item and what the basis for it is." Price then testified: "I know of one thing, that item about ever lived with a lover for two years or more, [the other practitioner] scored [Hill] on that item as he had and he has not."

During Price's testimony, there was a long exchange about how long Hill was out of prison after his release in February 1995. Price believed Hill was out of prison for less than two years and, therefore, could not have lived with his wife for two years or more; however, the evidence showed Hill was on parole for approximately two and a half years before he reoffended in the summer of 1997. Hill argues Price's mathematical error, if corrected, would have resulted in a Static-99 score of 4. We disagree.

Price testified that Hill reported he lived with his wife for "about a year," which means Price's calculation about how long Hill was on parole was immaterial. Additionally, the record does not show that Hill's score on the Static-99, as computed by Price, would have been a 4 if Hill had lived with his wife for two or more years.

–12–

Hill also argues Price's testimony is unreliable because Price did not remember the highest score a person could receive on the Static-99. Price testified it was an eighteen or twenty, but the highest score is a twelve. While Price was mistaken about this piece of information, the evidence shows Price was trained to use and understand the instrument. He also explained that the score, standing alone, is meaningless, but its meaning arises from comparing a person's score to the histories of other offenders. Knowing the scoring range is not necessary for using the tool.

At trial, the jury heard testimony from Hill and had the opportunity to evaluate his credibility. The jury heard Hill had stable employment, familial support, and complied with the terms of his parole. The jury also learned about Hill's prior sexual assault convictions, gang affiliation, criminal gang activities, and sexual offense while incarcerated. Additionally, Price provided expert testimony about Hill's scores on actuarial tools and what those scores meant. Price explained Hill's risk factors, what makes them risk factors, and actions Hill could have taken to reduce his risk factors. Price also explained the mitigating factors in Hill's favor. Price testified that after examining more than 2,000 pages of Hill's records, meeting with Hill twice, considering the results of the actuarial assessments, and analyzing the relevant research, he concluded Hill has a behavioral abnormality as defined by the Texas Health and Safety Code.

We have considered Hill's challenges to the sufficiency of the evidence and reviewed all evidence in the record. After reviewing the evidence in the light most favorable to the factfinder, we conclude a rational factfinder could have found Hill has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence beyond a reasonable doubt. *See In re Commitment of Johnson*, 2019 WL 364475, at *2. Additionally, in light of the entire record, we conclude "the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict," is not "so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *See In re Commitment of Stoddard*, 2020 WL 7413723, at *9. We overrule Hill's first issue.

**B. Jury Argument**

In his second issue, Hill argues the trial court abused its discretion by overruling his objection during closing argument when the prosecutor argued:

> In a few minutes, he is released from parole and he feels he has no need to continue sex offender treatment. No need whatsoever. But, yet, he wants to go out and counsel victims. Group setting, one-on-one setting. Can you imagine?
> Think about this. Think of someone you love who has sexually offended –
> [Hill's counsel]: Objection. This is incredibly inflammatory, Your Honor.
> THE COURT: Overruled.
> [Prosecutor]: They go to church, get counseling and who is sitting with them alone? Mr. Hill. That's terrifying.

Hill asserts the prosecutor's argument asks the jury to consider the case from an improper viewpoint rather than as a neutral fact finder. The State responds that the prosecutor's argument was invited by Hill's counsel and supported by the evidence presented at trial.

We review the trial court's ruling on an objection to closing argument for abuse of discretion. *In re Commitment of Johnson*, 2019 WL 364475, at \*8 (citing *Wal-Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 675 (Tex. App.—Dallas 2018, pet. granted, aff'd as modified w.r.m.) ("Control over counsel during closing argument is within the sound discretion of the trial court and will not be disturbed on appeal without a clear showing of abuse of that discretion.")). Generally, proper jury argument falls into one of these areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to an argument made by opposing counsel, or (4) a plea for the enforcement of a law. *See generally* TEX. R. CIV. P. 269(b), (e); *see also In re Commitment of Ybarra*, No. 09-14-00394-CV, 2016 WL 637728, at \*1 (Tex. App.—Beaumont Feb. 18, 2016, no pet.) (mem. op.). Counsel must be given great latitude to argue the facts and the issues. *In re Commitment of Johnson*, 2019 WL 364475, at \*8 (citing *Ramirez v. Acker*, 138 S.W.2d 1054, 1055 (Tex. 1940); *Sanchez v. Espinoza*, 60 S.W.3d 392, 395 (Tex. App.—Amarillo 2001, pet. denied)).

To obtain a reversal based on improper jury argument, the complaining party must show the trial court's ruling on its objection to the argument was error because

the argument was (1) not invited or provoked, (2) preserved by the proper trial predicate, (3) not capable of being cured by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial court, and (4) by its nature, degree, and extent, constituted reversibly harmful error. *In re Commitment of Ybarra*, 2016 WL 637728, at \*1 (citing *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979); *In re Commitment of Garcia*, No. 09–12–00194–CV, 2013 WL 6558623, at \*4 (Tex. App.—Beaumont Dec. 12, 2013, pet. denied) (mem. op.)).

Here, the jury was asked to decide whether Hill had a behavioral abnormality that made him likely to engage in predatory acts of sexual violence. It was therefore "entirely appropriate for the jury to consider whether" the individuals Hill would like to counsel "will be safe from a predatory act of sexual violence." *See In re Commitment of Eeds*, 254 S.W.3d 555, 560 (Tex. App.—Beaumont 2008, no pet.). As such, the trial court could have concluded it would not be improper for the prosecutor to invite the jury to consider the matter. *See id.* Accordingly, the trial court did not abuse its discretion by overruling the objection.

Even if we concluded the trial court abused its discretion by overruling Hill's objection, Hill fails to show it constituted reversibly harmful error. Rather, Hill argues that the prosecutor's argument—coupled with the "erroneous designation of Mr. Hill as 'highly dangerous'" and the "scant scientific data upon which to base the verdict"—caused the jury to render an incorrect verdict. We disagree.

Earlier in his closing, the prosecutor made an argument similar to the one about which Hill complains. The prosecutor argued that Hill has "[r]ealistic plans and employment. Fantastic. But when it becomes unrealistic is when he wants to counsel victims. That's frightening." Hill did not object. Additionally, the argument about which Hill complains was based on evidence presented to the jury that Hill desired to counsel other people. Taken together, we conclude this is insufficient to constitute reversibly harmful error. We overrule Hill's second issue.

## C. Jury Unanimity

In his third issue, Hill argues the trial court abused its discretion by refusing his request to charge the jury that it could render a verdict in his favor by a 10-2 vote. *See* TEX. HEALTH & SAFETY CODE § 841.146(b); TEX. R. CIV. P. 292(a). At the charge conference, Hill requested the charge allow the jury to vote 10-2 for a finding of "No" to the question "Is Timothy Hill a sexually violent predator."

The Supreme Court of Texas resolved this issue while this appeal was pending. It concluded that although a unanimous verdict is required to find a person is a sexually violent predator, only ten votes are necessary to reach a verdict declining to find that a person is a sexually violent predator. *See In re Commitment of Jones*, 602 S.W.3d 908, 913 (Tex. 2020). Thus, the trial court erred by refusing to give Hill's requested instruction. *See id.*

However, the trial court's error is reversible only if it was harmful. *Id.* (citing TEX. R. APP P. 44.1(a)). Hill argues the trial court's error caused the rendition of an

improper judgment.  In its opinion, the supreme court stated: "Because the members of the jury unanimously came to the conclusion that Jones is an SVP [sexually violent predator], an instruction explaining that a vote of ten of the jurors was sufficient for a verdict declining to find that Jones is an SVP would not have changed the outcome of this case." *Id.* at 915; *see also In re Commitment of K.H.*, 609 S.W.3d 247, 257 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ("[B]ecause the jury unanimously found that appellant was a sexually violent predator, the error did not probably cause the rendition of an improper judgment.").  As in the cases from the Texas Supreme Court and the Fourteenth District Court of Appeals, the members of the jury unanimously concluded Hill is a sexually violent predator.  Therefore, an instruction explaining that a vote of ten jurors was sufficient for a verdict declining to find Hill is a sexually violent predator would not have changed the outcome of this case.  We conclude the error probably did not cause the rendition of an improper judgment and was harmless. *See In re Commitment of Jones*, 602 S.W.3d at 915. We overrule Hill's third issue.

**D. Conclusion**

We affirm the trial court's judgment.


/Erin A. Nowell/
ERIN A. NOWELL
191163F.P05                              JUSTICE

–18–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

IN RE COMMITMENT OF
TIMOTHY HILL

No. 05-19-01163-CV

On Appeal from the 292nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. CV-17-70005

Opinion delivered by Justice Nowell.
Justices Molberg and Reichek
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of March, 2021.