

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00200-CV

———————————————————

IN RE: THE COMMITMENT OF JULIO PINEDA

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 19-6054-16

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Julio Pineda appeals the trial court's judgment civilly committing him as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001–.062. In one issue, Pineda complains that the trial court erroneously admitted experts' underlying-facts-or-data testimony under Texas Rule of Evidence 705(d). We overrule Pineda's issue because

> (1) Pineda himself testified about two persons who had alleged that Pineda had sexually abused them, so to the extent that the experts testified about the allegations from these same two people, any error was harmless;
>
> (2) after the trial court initially sustained Pineda's Rule 705(d) objection to testimony about a third person's allegation that Pineda had sexually abused her, the trial court did not abuse its discretion by later admitting testimony about this third person's allegations to allow the State to rebut Pineda's expert's misleading testimony that no other children had made allegations of sexual abuse against Pineda; and
>
> (3) other unadjudicated allegations of sexual abuse from two other children—about which Pineda did not complain at trial and does not complain about on appeal—came in without objection, so any purported error was harmless.

We affirm.

## I. Pineda's Criminal Background

In 2016, Pineda pleaded guilty to and was convicted of two counts of aggravated sexual assault against a child named Larry,[1] two counts of indecency with a

---

[1] We use aliases when referring to minors and their family members to protect the minors' identities. *See In re L.R.*, No. 02-19-00377-CV, 2020 WL 6788933, at *1 n.1 (Tex. App.—Fort Worth Nov. 19, 2020, no pet.) (mem. op.); *Tufts v. State*, No. 02-19-00143-CR, 2020 WL 5242431, at *1 n.1 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd) (mem. op., not designated for publication).

child by contact against the same child named Larry, and one count of indecency with a child by contact against a child named Charles. For all five convictions, Pineda received eight-year sentences that ran concurrently.

## II. The Civil Commitment Trial

Moving forward to 2020 and Pineda's civil commitment trial, both the State's expert and Pineda's expert relied on the same report—a report including allegations that Pineda had engaged in sexual misconduct with persons other than Larry and Charles. Pineda questioned the reliability of these other allegations, argued that their prejudicial effect outweighed their probative value, and opposed the experts' testifying about them. Pineda based his objection on Texas Rule of Evidence 705(d), which provides,

> **(d) When Otherwise Inadmissible Underlying Facts or Data May Be Disclosed; Instructing the Jury.** If the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect. If the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly.

Tex. R. Evid. 705(d).

Specifically, Pineda objected to three categories of other alleged sexual misconduct:

> 1. His sexual relationship with a man named David, a member of Pineda's church whom Pineda was mentoring;

3

2.  A mentally ill coworker's[2] allegation of sexual abuse that resulted in Pineda's getting fired; and

3.  Pineda's close relative's (Barbara's) allegation that he had sexually abused her.[3]

The trial court sustained Pineda's objection as to Barbara's allegations, overruled it as to David's and the coworker's, and granted a running objection to the testimony regarding David's and the coworker's allegations.

### III.  Standard of Review

We review a trial court's evidentiary rulings under an abuse of discretion standard.  *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015).  A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if it acts arbitrarily or unreasonably.  *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).  If the record supports any legitimate basis for the trial court's evidentiary ruling, we uphold it.  *Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43; *In re Commitment of Cain*, No. 02-18-00043-CV, 2018 WL 5993335, at *2 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.).

---

[2]Pineda disclosed the coworker incident to his expert witness during a deposition; Pineda did not know the coworker's name.

[3]Barbara made her outcry to Child Protective Services, so she was presumably a child when she made the outcry.

4

Experts in civil proceedings to commit sexually violent predators may disclose details about the underlying facts or data—including the details of unadjudicated sexual assaults—that they relied on in arriving at their opinions. *See In re Commitment of Stuteville*, 463 S.W.3d 543, 554–56 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see also In re Commitment of Talley*, 522 S.W.3d 742, 748–49 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Having experts explain the facts they considered and how those facts influenced their evaluations assists the jury in weighing the expert's opinion about the presence or absence of behavioral abnormality in the defendant, which is the issue that jurors must determine. *See Stuteville*, 463 S.W.3d at 555; *see also Talley*, 522 S.W.3d at 748–49; *In re Commitment of Young*, 410 S.W.3d 542, 557 (Tex. App.—Beaumont 2013, no pet.). Such evidence, however, is subject to the same relevancy constraints that govern other kinds of evidence. *See Talley*, 522 S.W.3d at 748 (citing Tex. R. Evid. 403, 705(d)); *In re Commitment of Farro*, No. 01-18-00164-CV, 2018 WL 6696567, at *10 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, pet. denied) (mem. op.); *In re Commitment of Marshall*, No. 02-17-00452-CV, 2018 WL 4354402, at *6 (Tex. App.—Fort Worth Sept. 13, 2018, no pet.) (mem. op.).

To preserve error in the admission of evidence, a party must make a timely objection; an objection is timely if it is made when the evidence is offered. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409–10 (Tex. 1998). The objection must identify the objectionable evidence, identify the rule or legal principle that bars admitting the evidence, and explain how the evidence violates the rule or legal

5

principle. *See Hoxie Implement Co. v. Baker*, 65 S.W.3d 140, 145 (Tex. App.—Amarillo 2001, pet. denied); *Burleson v. Finley*, 581 S.W.2d 304, 310 (Tex. App.—Austin 1979, writ ref'd n.r.e.). Even if a party timely objects, if substantially similar evidence is subsequently presented to the jury without objection, any error is deemed harmless. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008); *see Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004).

A party may request a running objection by describing the scope of objectionable evidence and asking the court to grant a running objection covering all subsequent evidence that fits that description. *Volkswagen of Am., Inc.*, 159 S.W.3d at 907. A running objection must be specific and is waived if the party fails to object to similar evidence that is not covered by the running objection. *Lubbock Cty. v. Reyna*, No. 07-19-00330-CV, 2021 WL 45678, at *3 (Tex. App.—Amarillo Jan. 5, 2021, pet. filed) (mem. op.); *Harris Cty. Flood Control Dist. v. Taub*, 502 S.W.3d 320, 327 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 203 (Tex. App.—Texarkana 2000, pet. denied); *see Volkswagen of Am., Inc.*, 159 S.W.3d at 907.

## IV. Discussion

### A. David

Even without the experts' testimony, the jury learned that Pineda had a sexual relationship with David and that David had alleged that the relationship was nonconsensual. Pineda pleaded his Fifth Amendment right against self-incrimination

6

when asked whether he had harmed David or had physically threatened him or his wife. *See* U.S. Const. amend. V.[4] According to Pineda, David, not he, had prompted their sexual relationship: "If he initiated everything, how is it that I assaulted him?" Pineda maintained that he and David had consensual sex and that even after Pineda had gotten married, his relationship with David had continued for another four years. Despite the purported consensual nature of their relationship, Pineda was aware that David had alleged that Pineda had forced him into having sex, but Pineda denied the allegations.

Because Pineda was not an expert, his running Rule 705(d) objection did not cover his testimony. *See Lubbock Cty.*, 2021 WL 45678, at *3; *Huckaby*, 20 S.W.3d at 203; *see also* Tex. R. Evid. 705. And because Pineda himself provided evidence that was substantially similar to that presented by the experts regarding David, any error in admitting the expert's evidence was harmless. *See Reliance Steel,* 267 S.W.3d at 873; *Lubbock Cty.*, 2021 WL 45678, at *3.

## B. The Coworker

While testifying, Pineda denied that anyone other than David, Larry, and Charles had ever accused him of sexual abuse. Later, though, Pineda acknowledged

---

[4]When a witness invokes the Fifth Amendment in a civil case, a factfinder may draw reasonable inferences. *In re Commitment of Gipson*, 580 S.W.3d 476, 486 (Tex. App.—Austin 2019, no pet.). Although the jury is free to draw a negative inference, asserting the privilege does not substitute for relevant evidence. *Id.* at 487. Without some other probative evidence, any negative inference drawn from a witness's invoking the right against self-incrimination cannot rise beyond mere suspicion. *Id.*

that a mentally ill coworker had alleged that Pineda had wanted to sexually abuse him and that, as a consequence, Pineda was fired.

Once again, Pineda was not an expert, so any running Rule 705(d) objection afforded him no help. *See Lubbock Cty.*, 2021 WL 45678, at *3; *Huckaby*, 20 S.W.3d at 203; *see also* Tex. R. Evid. 705. Consequently, when Pineda himself provided evidence that was substantially similar to that presented by the experts about the coworker, he rendered any error harmless. *See Reliance Steel,* 267 S.W.3d at 873; *Lubbock Cty.*, 2021 WL 45678, at *3.

## C. Barbara

As noted earlier, the trial court initially sustained Pineda's Rule 705(d) objection to Barbara's allegations. Later, however, that evidence came in anyway.

On direct, Pineda's expert was asked how Pineda had described his past relationships with children, and Pineda's expert responded that Pineda himself had children and nephews, that Pineda thus had been around other children, and that Pineda had "describe[d] having positive, healthy, safe relationships with other individuals." But outside the jury's presence, the State argued that Pineda's expert had misled the jury: "[B]eyond these two boys [(Larry and Charles)], [he asserted that Pineda had] been safe around other children. He's been safe around I think nephews and his sons. But I feel like this paints an inaccurate picture to the jury because [a

8

close female relative] has accused him of sexually abusing her."[5] Pineda argued Rule 705 again and how the allegations lacked any reliability. This time, however, the trial court sided with the State and ruled that it could cross-examine Pineda's expert about Barbara's allegations.

And the State did just that. The State asked Pineda's expert whether any children other than Larry and Charles had made any sexual-abuse outcries against Pineda. Pineda objected on the bases of relevance and hearsay.[6] The trial court overruled those objections, and Pineda's expert stated that Barbara had also made an outcry against him.

### 1. Relevance

A party can make otherwise irrelevant evidence relevant by injecting collateral issues into a lawsuit or by presenting misleading testimony. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *In re C.F.M.*, No. 05-16-00285-CV, 2018 WL 1704202, at *10 (Tex. App.—Dallas Apr. 9, 2018, pet. denied) (mem. op.); *Robinson v. Garcia*, No. 11-12-00295-CV, 2016 WL 1725297, at *10 (Tex. App.—Eastland Apr. 29, 2016, pets. denied) (mem. op. on reh'g). Courts refer to this as "opening the door," and once a party opens the door, the opposing party may offer rebuttal evidence. *Bay Area Healthcare Grp.*, 239 S.W.3d at 234. Not permitting

---

[5]In fairness to Pineda's expert, the trial court had previously sustained Pineda's Rule 705(d) objection to any testimony about Barbara's allegations.

[6]We conclude that contextually, the trial court would have understood those objections within the framework of Rule 705(d). *See* Tex. R. App. P. 33.1(a)(1)(A).

rebuttal evidence may constitute an abuse of discretion. *See Robinson*, 2016 WL 1725297, at *10.

After reviewing Pineda's expert's testimony, the trial court asserted that his testimony was misleading and, effectively, had opened the door: "[Pineda's expert's testimony] left a different impression in the mind of the jury than what this outcry by [Barbara] would suggest and what was reported to the parole board. So I'm going to allow [the State] to ask [him] questions [about] that when [it] cross-examine[s] him." We hold that the trial court did not abuse its discretion by concluding that Pineda's expert's testimony (that Pineda described himself as having safe relationships with other children) had made the expert's knowledge to the contrary (Barbara's allegations) relevant. *See Bay Area Healthcare Grp.*, 239 S.W.3d at 234; *C.F.M.*, 2018 WL 1704202, at *10; *Robinson*, 2016 WL 1725297, at *10.

## 2. Hearsay

Texas Rule of Evidence 801 generally excludes out-of-court statements offered for the truth of the matter asserted. Tex. R. Evid. 801; *In re Commitment of Johnson*, 613 S.W.3d 613, 617 (Tex. App.—San Antonio 2020, pet. denied), *cert. denied sub nom. Johnson v. Texas*, No. 20-7774, 2021 WL 2044634 (U.S. May 24, 2021). But provided the probative value outweighs the prejudicial effect, experts may testify to facts and data underlying their opinions even if that basis includes hearsay. Tex. R. Evid. 705(d); *Johnson*, 613 S.W.3d at 617. In civil proceedings to commit sexually violent predators, this includes evidence of unadjudicated offenses provided that evidence

10

helps the jury understand and weigh an expert's testimony regarding whether a person has a behavioral abnormality. *Johnson*, 613 S.W.3d at 617.

Pineda's expert's testimony left the jury with the impression that, apart from Larry and Charles, Pineda had safe relationships with other children. Regardless of the veracity of Barbara's allegations, they raised concerns that something about Pineda and Barbara's relationship was seriously amiss.

The jury heard testimony that Barbara did not make the allegations until after Pineda had been incarcerated, that Child Protective Services had closed the case administratively, that Pineda's ex-wife had opposed Pineda's having any communication or contact with Pineda's male children, and that Barbara had made inconsistent statements about whether Pineda had abused her.[7] As a result, the jury was aware that Barbara's allegations might have been nothing more than that—allegations.

Pineda's expert testified that Pineda did not meet the behavioral-abnormality criteria. When explaining his reasoning, he gave testimony that left the jury with the false impression that Pineda had no other allegations involving children, but the truth was that one of Pineda's own close relatives had accused him of sexually abusing her. Other evidence suggested that the allegations might have been suspect. Overall, the information helped the jury understand and weigh Pineda's expert's testimony that

---

[7]Pineda and his ex-wife had two children together. Barbara was biologically related to Pineda but not to Pineda's ex-wife.

11

Pineda did not have a behavioral abnormality—a conclusion the expert arrived at despite allegations of incestuous sexual abuse from Barbara. *See id.* at 618 ("In [a] case [involving a sexually violent predator], an expert's opinion regarding risk assessment is pivotal, and it is important for a jury to be able to consider and scrutinize how the testifying expert arrived at his opinion in order for the jury to arrive at its own conclusion."). We hold that the trial court did not abuse its discretion by concluding that this hearsay's probative value outweighed its prejudicial effect and by admitting this evidence. *See* Tex. R. Evid. 705(d); *Johnson*, 613 S.W.3d at 617.

## D. Harmless

Even if we were to hold that admitting the disputed testimony was an abuse of discretion, Pineda cannot show harm.

Pineda did not object to a fourth category of alleged unadjudicated sexual misconduct. The State's expert testified that both Larry and Charles alleged that Pineda had sexually abused them up to four times a week for four years, which added up to perhaps as many as 1,664 total instances of sexual abuse. This number greatly exceeded Pineda's four convictions involving Larry and one conviction involving Charles.

Pineda denied touching Charles for over four years and maintained that there was only one incident involving him.

As for Larry, Pineda testified about three occasions when he sexually abused him. As we understand Pineda's testimony, the four convictions involving Larry were

12

the product of these three incidents, but the indictments alleged four different "on or about" dates—April 15, 2005; March 15, 2006; September 15, 2006; and April 1, 2008. In any event, Pineda said that 1,664 was nowhere close to the number of times that he had abused Larry and Charles. As a result, by a multiple of over 300, a chasm existed between the number of offenses that Pineda admitted committing and the number of offenses that Larry and Charles alleged that he had committed.

Other unobjected-to evidence showed aggravating factors. At the time that Pineda committed the offenses against Larry and Charles, Pineda was a pastor at a church. Pineda acknowledged that as pastor of the church, he would minister to couples, including Larry and Charles's parents—David and David's wife. David was Larry and Charles's stepfather. Pineda thus had sexual relations with both David and David's stepchildren while ministering to David and David's wife.

We reverse a trial court's judgment only if an erroneous evidentiary ruling probably, though not necessarily, caused the rendition of an improper judgment. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012); *Reliance Steel*, 267 S.W.3d at 871. We are not persuaded that any purported error probably caused the rendition of an improper judgment.

Although Pineda questioned the reliability of the accusations against him, the jury could have reasonably questioned Pineda's credibility. Pineda's own expert found evidence that Pineda engaged in pathological lying. As the exclusive factfinders, the jurors decide which witnesses were credible, what weight to assign the various

13

witnesses' testimony, and how to resolve any conflicts or inconsistencies in the testimony. *In re R.W.*, 129 S.W.3d 732, 742–43 (Tex. App.—Fort Worth 2004, pet. denied). Thus, despite Pineda's contention that the other allegations of sexual abuse were dubious, the jury was free to believe that—as the State's expert opined—with that much smoke, a person could justifiably suspect a fire:

> Well, I have to look at [the allegations of unadjudicated offenses]. I think it wouldn't be ethical not to look at [them]. If something is alleged, [that] certainly doesn't mean it did not happen. And I'm trained to use sort of a credibility filter whenever I'm looking at these.
>
> And one incident by itself is not as significant. But it's kind of like smoke, smoke, smoke, fire. That there's like a pattern that seems to be going on. In particular, vulnerable type individuals for Mr. Pineda. And I don't see that . . . any of these people knew each other of the three additional victims.
>
> And so I don't see the motivations of people to come forth and say lies. So when you kind of put everything together, that is what I do is I look for patterns of behavior and think it makes a lot of sense.

Put another way, the volume of unadjudicated allegations were themselves significant and factored into his opinion. Lending credence to the allegations—at least to the extent that the expert said that ignoring them would be unethical—was the fact that the allegations were coming from disparate sources and showed a pattern of betraying trust or abusing innocence.

Viewing the number of alleged offenses against Larry and Charles, given the four years during which the alleged abuse against them purportedly occurred, and seeing how Pineda admitted abusing Larry and Charles while ministering to their

14

parents—a gross abuse of trust—we hold that the experts' testimony about David (an adult theoretically capable of defending himself), the coworker (a person who despite any mental illness defended himself by reporting the attempted abuse), and Barbara (whose alleged abuse roughly paralleled the abuse alleged by Larry and Charles) was harmless. *See U-Haul Int'l, Inc.*, 380 S.W.3d at 136; *Reliance Steel*, 267 S.W.3d at 871.

For all the above reasons, we overrule Pineda's issue.

## V. Conclusion

Having overruled Pineda's issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 26, 2021